Commonwealth *v.* Sheldon.

COMMONWEALTH *vs.* HEATHER SHELDON.

Essex. November 7, 1995. - August 1, 1996.

Present: LIACOS, C.J., WILKINS, O'CONNOR, & GREANEY, JJ.

*Motor Vehicle,* Operating under the influence. *Evidence,* Hospital record, Blood alcohol test, Hearsay.

Where a sample of blood of the driver of an automobile involved in an accident was not obtained to assist in the achievement of any medical goal or pursuant to established hospital protocol, the record of test results with respect to blood alcohol level were not admissible pursuant to G. L. c. 233, § 79 [376-377], however, other lawfully obtained competent evidence of the test results would be admissible [377].

COMPLAINT received and sworn to in the Gloucester Division of the District Court Department on January 8, 1993.

A pretrial motion to suppress evidence was heard by *David E. Harrison,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Wilkins,* J., in the Supreme Judicial Court for the county of Suffolk, and a question of law was reported by him.

*Robert J. Bender,* Assistant District Attorney, for the Commonwealth.

*Edward J. O'Reilly* for the defendant.

O'CONNOR, J. The defendant is charged with homicide by negligently operating a motor vehicle while under the influence of an intoxicant in violation of G. L. c. 90, § 24G (*b*) (1994 ed.), and with operating a motor vehicle while under the influence of an intoxicant in violation of G. L. c. 90, § 24 (1) (*a*) (1994 ed.). The defendant moved to suppress a hospital record showing the result of a blood test indicating her blood alcohol level was .13. The defendant asserted three grounds in support of her motion: (1) the test constituted an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution; (2) publication of the

test result would violate her right of privacy afforded by G. L. c. 214, § 1B (1994 ed.), and of confidentiality afforded by G. L. c. 111, § 70E (*b*) (1994 ed.); and (3) the test result was not made admissible by G. L. c. 233, § 79 (1994 ed.), the statute that excepts certain hospital records from the common law rule against hearsay evidence. Although the motion judge was not persuaded by the defendant's first two arguments, he concluded that the record of the result of the blood test was not related to the defendant's medical history and treatment within the meaning of those words in G. L. c. 233, § 79, and that therefore that statute did not apply. Based on that reasoning, the judge allowed the motion to suppress.

A single justice of this court then allowed the Commonwealth's application for interlocutory appeal. In his memorandum of decision, the single justice also reported "the question whether, if the blood test results are not admissible under the statute, that ruling automatically bars the admission of the test results presented through the person who conducted the test or the attending physician, or both." We affirm the District Court judge's exclusion of the hospital record, and we answer the reported question, "No."

The motion judge's memorandum of decision, under the heading, "Findings of Facts," states the following: "On or about November 22, 1992, at approximately 1 a.m., the defendant, Heather Sheldon was involved in an accident which resulted in the death of her boyfriend, Joe Bowers. On January 8, 1993, the defendant was charged with vehicular homicide while under the influence of liquor pursuant to Mass. Gen. L. ch. 90 § 24G(b).

"Since the facts of the accident are quite unique, a more detailed description of the events is warranted. Earlier in the evening in question, the defendant, Heather Sheldon, and her boyfriend, Joe Bowers, were at a bar. An argument later ensued, resulting in the victim, Joe Bowers, leaving the bar and walking toward his apartment in Rockport. Approximately a half-an-hour later, Heather also left the bar and drove home in her jeep. En route to her apartment, Ms. Sheldon saw her boyfriend hitchhiking. She pulled over and asked him to get in the jeep. He screamed some obscenities and she decided to drive away. A couple of minutes later, the defendant decided to turn back and pick her boyfriend up. She pulled up beside him again and repeated the request that he

get in the jeep. This time, Joe Bowers was extremely hostile and began pounding his fists on the jeep.

"What transpired next has been hypothesized by the Rockport police who later reconstructed the accident. The police suggest that when Heather pulled away this second time, to avoid her angry boyfriend, he most likely took a step toward the jeep (perhaps to hit the jeep one last time) and caught his arm on the side view mirror, throwing him to the ground. The victim struck the ground with such force that his skull was severely fractured, causing his death.

"Three Rockport police officers were called to the scene. While all of the officers testified they smelled alcohol on the defendant's breath, none affirmatively thought she was intoxicated. In addition, although the defendant was extremely hysterical at the scene of the accident, she did not appear to be injured. While the testimony at the probable cause hearing is not clear as to who finally suggested Heather Sheldon go to the hospital, it is clear she was never placed under arrest, and that the police did not order any medical tests to be performed.

"At the hospital Dr. [G.] examined Heather Sheldon. After performing a neurological examination on the defendant, the doctor determined Heather to be sober and uninjured, but obviously quite upset. The 'for cause' hearing revealed that the hospital did not have any set protocol regarding blood alcohol tests. According to Doctor [G.], 'if there's any change in normal mental function, and we're concerned about chemicals being the cause of that as opposed to injury, we'll go ahead and get an alcohol level. But there is no specific policy.' Doctor [G.] further testified that his reason for suggesting the blood test was only to prove Heather Sheldon was not intoxicated. However, to Dr. [G.'s] surprise, the result of the blood alcohol test did not support his observations that the defendant was sober, but instead returned a reading of .13."

Viewed in context, it is clear that, despite the words "[a]ccording to Doctor [G.]" and "Doctor [G] further testified," the judge in those instances was not merely repeating testimony but instead found as facts that "the hospital did not have any set protocol regarding blood alcohol tests" and the doctor's "reason for suggesting the blood test was only to prove Heather Sheldon was not intoxicated." Indeed, the

Commonwealth states in its brief in a section entitled "Statement of Facts" that "[t]he motion judge accepted the doctor's testimony about why he ordered a blood-alcohol test be performed," and "[t]he judge accepted the doctor's representation that hospital protocol did not require the test." In addition, the defendant states in her brief, "Pursuant to Rule 16 of the Rules of Appellate Procedure, the Defendant does not contest the Statement of the Case or the Facts of the Case as presented by the Commonwealth." The findings that (1) the only purpose in conducting the blood alcohol test was to prove the defendant's sobriety, and (2) there was no set hospital protocol for conducting such a test in the relevant circumstances, are critical to our decision.

General Laws c. 233, § 79, provides in relevant part as follows:

> "Records kept by hospitals . . . under section seventy of chapter one hundred and eleven shall be admissible . . . as evidence in the courts of the commonwealth so far as such records relate to the treatment and medical history of such cases . . . but nothing therein contained shall be admissible as evidence which has reference to the question of liability."

The statute contemplates recorded information that relates to medical treatment and to history obtained "for purposes of medical diagnosis or treatment." *Bouchie* v. *Murray*, 376 Mass. 524, 531 (1978). It is clear that the information concerning the amount of alcohol in the defendant's blood was not obtained, and was not preserved, to assist in the achievement of any medical goal. Thus, the present case is significantly unlike *Commonwealth* v. *Dube*, 413 Mass. 570 (1992), in which the defendant's blood alcohol content was "determined by a test performed as a routine medical practice in the course of the treatment of the defendant following a motor vehicle accident." *Id.* at 570. In that case, "[b]ecause he was injured, the defendant was taken by ambulance to a hospital for medical treatment. The police officers who came to the accident scene concluded that the defendant was under the influence of alcohol. At the hospital, on direction of a physician, 'as a routine medical procedure,' and solely because the procedure was good medical practice, hospital personnel drew blood from the defendant. The blood serum was tested

for its ethanol content, and the result recorded in the hospital record." *Id.* at 571. Although "liberal construction has permitted the admission in evidence of statements in hospital records bearing on criminal culpability that seem to relate at most only incidentally to medical treatment," *id.* at 573, in the present case the statement in the hospital record at issue does not relate incidentally or otherwise to medical treatment. Even if one were to consider blood-alcohol content as a "medical fact" in a broad sense, a hospital record of such a fact is admissible under the statute only if the information was obtained in connection with a medical treatment determination or application or pursuant to established hospital protocol. The judge in the District Court in this case ruled correctly.

We turn very briefly to the question reported by the single justice concerning "whether, if the blood test results are not admissible under the statute, that ruling automatically bars the admission of the test results presented through the person who conducted the test or the attending physician, or both." The answer is "No." The *record* of the test results is inadmissible hearsay. Other lawfully obtained competent evidence of the test results, however, may be admitted.

The case is remanded to the District Court for trial in accordance with this opinion.

*So ordered.*