Fabricant, J.
INTRODUCTION
In this personal injury action arising from a motor vehicle collision, the defendants move to preclude the admission in evidence at trial of a letter from a physician expressing an opinion as to causation of the alleged injury. For the reasons that will be explained, the motion will be allowed.
BACKGROUND
The materials submitted in connection with the Defendants’ Motion in Limine present the following factual background.[1] The plaintiffs’ ward, Eric Nolin, now age 26, has been severely disabled since birth. He suffers from cerebral palsy, scoliosis, pulmonary difficulties, and other chronic medical disorders. He uses a wheelchair, and is non-verbal.
Before the collision that is the subject of this case, Nolin had chronic feeding problems, including difficulties in swallowing and gastrointestinal reflux. These problems rendered him malnourished, and the reflux caused him to aspirate food into his lungs, leading to recurrent aspiration pneumonia. In February of 1994, in an effort to address these problems, Dr. Nabil Jacir, then of the New England Medical Center, performed on Nolin a surgical procedure in which a tube known as a “G-tube” was inserted into his stomach to provide a means of feeding. Thereafter, he continued to suffer from aspiration pneumonia. Accordingly, in July 1994, Dr. Jacir performed a second surgical procedure, known as a fundoplication. The defendants’ expert, Dr. Rosenberg, describes that procedure as involving “wrapping a portion of the stomach lining around the esophagus so as to narrow the entiy to the esophagus.” Despite this procedure, Nolin had additional bouts of aspiration pneumonia in July of 1994, May and November of 1995, and February of 1996.
The collision that is the subject of this action occurred onApril 17,1996, while Nolin, secured in his wheelchair, was a passenger in a van owned by the defendant Greater Newburyport Educational Collaborative, and operated by the defendant Kenneth J. French. Nolin was taken from the scene of the accident to the Beverly Hospital, where he was treated for abrasions to his left shoulder and forehead. He was released from the hospital that day and returned to his school program the next day. Hospital, emergency medical, and visiting nurse records establish that, despite examination, medical personnel found no evidence of any other injuries on the date of the collision or over the next few days. In particular, the records show no evidence of any internal injury or of any injury to the abdominal area.
Mary Auger-Elkhoury, identified as Nolin’s “care provider,” upon being asked at deposition whether she had observed any bruises on Nolin’s stomach, answered “there was redness, he was a little tender, he had a few little bruises throughout his upper body.”[2] She later elaborated that “I remember some indentations from the body jacket, redness. I don’t remember bruises.” Asked to further locate the redness, she responded “the middle of his stomach . .. around his belly button area.”
In July 1996, Dr. Jacir performed a third surgical procedure on Nolin, called a “Roux-em-Y feeding jejunostomy.” This procedure, according to Dr. Rosenberg, involves the placement of a feeding tube, known as a “J-tube,” directly into the intestines, so as to permit food to be absorbed directly by the intestines without the risk of reflux. From the time of this procedure through December 11, 1998, Nolin experienced no episodes of aspiration pneumonia.[3] The records of the New England Medical Center regarding the July, 1996, surgical procedure make no mention of the collision. Sometime after this third surgery, Dr. Jacir left the New England Medical Center and moved to New Jersey, where he is now in practice.
*153 In discovery in this action, the plaintiffs responded to the defendants’ expert witness interrogatories by identifying Dr. Jacir as the sole expert they intended to call at trial with respect to Nolin’s alleged injury. As the subject matter of and grounds for Dr. Jacir’s opinion, plaintiffs’ entire answer was “Dr. Jacir is a board certified pediatric surgeon who will testify that there is a causal relationship between the accident and the subsequent surgical replacement of the G tube with a J tube.” Thereafter, however, the plaintiffs informed defendants that they did not intend to call Dr. Jacir to testify, but instead intend to offer in evidence, pursuant to G.L.c. 233, §79G, a letter from Dr. Jacir to the plaintiffs’ attorney, dated March 17, 1999. The letter states, in its entirety, as follows:
This is in response to our (sic) inquiry concerning the accident that Eric Nolin was involved in on April 17, 1996. Eric had a fundoplication performed on July 8, 1994 because of gastroesophageal reflux. As you might be aware, this procedure has a high failure rate for various reasons. The usual quota rate of failure is eight percent per year. However, Eric needed his fundoplication redone again because of reflux on July 25, 1996. Obviously, the accident he was involved in preceded this redo fundoplication. As I have mentioned previously, eight percent (8%) of these operations fail spontaneously. However, in my opinion to a reasonable degree of medical certainly, a sudden increase in intra-abdominal pressure that was caused by the accident was a substantial contributing factor, but not the only factor, to the disruption of the fundoplication, necessitating the redoing of the fundoplication. As a further result, Eric now has a J-tube twenty-four hours per day, whereas before the accident, he had a G-tube at night. This difference affects his quality of life.
I hereby certify under the pains and penalties of perjury that I was licensed to practice medicine in the Commonwealth of Massachusetts at the time I rendered treatment to Eric Nolin.[4]
This letter is the subject of the present motion in limine. Defendants argue that the letter is inadmissa-ble on two independent grounds: first, because it is hearsay and does not fall within the exception to the hearsay rule provided by G.L.c. 233, §79G; and second, because it does not meet the reliability test established in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993), as clarified in Kumho Tire Co., Ltd. v. Carmichael, 119 S. Ct. 1167, 1174 (1999), adopted by the Supreme Judicial Court in Commonwealth v. Lanigan, 419 Mass. 15, 24-25 (1994). This Court agrees with both grounds.
DISCUSSION
1. General Laws c. 233, §79G.
General Laws c. 233, §79G, as amended by St. 1987, c. 540; St. 1988, c. 130, provides in pertinent part as follows:
In any proceeding commenced in any court, commission or agency, an itemized bill and reports, including hospital medical records, relating to medical, dental, hospital services . . . rendered to or prescribed for a person injured, or any report of any examination of said injured person, including, but not limited to hospital medical records subscribed and sworn to under the penalties of peijury by the physician . . . rendering such services . . . shall be admissible as evidence of the fair and reasonable charge for such services or the necessity of such services or treatments, the diagnosis of said physician . . . , the prognosis of such physician . . . , the opinion of such physician ... as to proximate cause of the condition so diagnosed, the opinion of such physician ... as to disability or incapacity, if any, proximately resulting from the condition so diagnosed; provided, however, that written notice of the intention to offer such bill or report as such evidence . . . has been given . . . Nothing contained in this section shall be construed to limit the right of any party to the action to summon, at his own expense, such physician ... for the purpose of cross examination with respect to such bill, record and report or to rebut the contents thereof. . .
Prior to its 1988 amendment, this statute was substantially more limited; it authorized admission only of bills for medical services, and those only as evidence of “the necessary, fair and reasonable charge for such services.” Section 79 of c. 233, however, did and still does authorize admission of “(rjecords kept by hospitals, dispensaries or clinics, and sanatoria... so far as such records relate to the treatment and medical history of such cases ...” The Supreme Judicial Court construed that statute in Bouchie v. Murray, 376 Mass. 524, 527-28 (1978). That decision is instructive here.
In Bouchie, the SJC described §79 as “an exception to the hearsay rule” for “the substantive content of hospital records because of the presumption of reliability which attaches to statements relating to treatment and medical history in these records.” The Court went on to observe that “[t]his presumption of reliability .. . arises primarily from the fact that entries in these records are routinely made by those charged with the responsibility of making accurate entries and are relied on in the course of treating patients.” In interpreting the statute and applying it to particular documents, the Court taught, “the purpose of the statute — to admit presumptively reliable evidence without the necessity of calling numerous hospital personnel as witnesses — must be kept in mind.” Based on this purpose, the Court construed the statutory exception as limited to “entries made in the regular course of the institution’s operation from the personal knowledge of those who have an obligation in the course of their employment to transmit that medical information to the recorder.” See also Commonwealth v. Sheldon, 423 Mass. 373, 376 (1996).
*154 Section 79G, as amended in 1988, is considerably broader than Section 79, both in the records covered and in the purposes for which such records may be admitted in evidence. It includes “reports," not limited to hospital records, “relating to” services “rendered to or prescribed for a person injured,” as well as “any report of any examination of said injured person.” Moreover, such documents are admissible as evidence not only of the necessity of treatment, but also of diagnosis, prognosis, opinion as to proximate cause, and opinion as to disability.
The only reported decision cited by the parties construing §79G as amended is Ortiz v. Stein, 31 Mass.App.Ct. 643, 645 (1991). There, the Appeals Court described the purpose of the statute, and its 1988 amendment, as follows:
Prior to its amendment in 1988, §79G applied to proof of medical and hospital bills but not to reports, and constituted a straightforward statutory exception to the hearsay rule . . . Central to its purpose was the avoidance of generally perfunctoiy and time-wasting court appearances by “persons from whom [a plaintiff] had received medical treatment ...” The 1988 amendment essentially extended the economies of proof by sworn document to other statements commonly included in the records of a treating or examining physician and relating to diagnosis, prognosis, and the cause and disabling effect of a patient’s condition. Implicit in that extension is the recognition that the economies of proving medical bills without witnesses in personal injury cases frequently are nullified by pragmatic trial considerations requiring that the billing physician be called to testify to or from his recorded observations and opinions which often are as un-controverted as medical bills.
Based on this analysis of the history and purpose of the statute, the Court held that it did not authorize admission of an affidavit of a physician who had not treated or examined the plaintiff regarding the cause of the plaintiffs injuries.
Although the Appeals Court’s decision in Ortiz v. Stein does not cite Bouchie v. Murray, and does not explicitly discuss the indicia of reliability recognized in that case, its reading of §79G reflects the same reasoning applied by the SJC in construing §79. As the SJC did in Bouchie with respect to §79, the Appeals Court interprets §79G in light of its purpose, particularly the practical realities that justify the hearsay exception provided by each statute. The Appeals Court’s reference to “statements commonly included in the records of a treating or examining physician,” Ortiz at 645, corresponds to the SJC’s reference to “entries .. . routinely made by those charged with the responsibility of making accurate entries and . . . relied on in the course of treating patients,” Bouchie at 528. See also Gompers v. Finnell, 35 Mass.App.Ct. 91, 94 (1993) (reading §79G as giving evidentiary weight to “opinions expressed in the treatment records”). These decisions read the two statutes as permitting admission of records that carry a presumption of reliability, arising from their having been generated in the ordinary course of the work of a physician or hospital, but not materials that lack the benefit of that presumption.
The letter in issue here, although written by a physician who treated the patient, and who can be assumed to have examined him in connection with the treatment, cannot fairly be described as a record or report of the treatment or of any examination. The opinion it expresses relates to the treatment in the sense that it addresses the cause of the need for the treatment. But the absence of any mention of the collision in contemporaneous treatment records reveals that any causal connection between the collision and the need for the treatment was entirely irrelevant to any medical issue relating to the treatment, including the decision to perform it and the actual performance of it. Thus, neither Dr. Jacir nor anyone else involved at that time had any occasion in the context of the performance of professional duly to form, express, or record any opinion as to any such causal connection.
The letter was not included in Dr. Jacir’s or the New England Medical Center’s records of Eric Nolin’s surgery. Rather, it was written nearly three years after the treatment, in the context of litigation, and apparently at the specific request of the plaintiffs’ attorney for the sole purpose of use in litigation. It is thus not a document of the sort “commonly included in the records of a treating or examining physician,” Ortiz at 645. It carries none of the indicia of reliability discussed in Bouchie, and accordingly enjoys no presumption reliability to justify its admission. Admission of this letter in evidence would stretch §79G well beyond the “economies of proof’ for which it was intended, Ortiz at 645, transforming it into a wholesale authorization for trial by affidavit.
2. Reliability Under Daubert.
Defendants argue that even if Dr. Jacir’s letter were within the scope of G.L.c. 233, §79G, it would nevertheless be inadmissable under the rule of Daubert v. Merrell Dow Pharmaceutical, Inc., 509 U.S. at 589. That rule, adopted by the SJC in Commonwealth v. Lanigan, 419 Mass. at 24-25, requires the Court to act as gatekeeper, admitting expert opinion evidence only after first determining that the evidence is reliable. In its recent decision in Kumho Tire Co., Ltd. v. Carmichael, 119 S.Ct. 1167, 1174 (1999), the Supreme Court clarified that the Daubert rule applies to all expert opinion evidence, including opinions based on specialized training and experience as well as those based on scientific knowledge. Factors to be considered in determining reliability include, but are not limited to: (1) whether the theory or technique underlying the opinion is generally accepted in the relevant *155 scientific community; (2) whether it can be and has been tested, and the outcome of any testing; (3) its error rate, and the existence of any controls or standardization; and (4) whether it has been subjected to peer review and publication. Daubert, at 592-94. The Court’s application of these factors must be flexible and tied directly to the facts of the case, including the expert’s particular expertise, the subject of the expert’s testimony, and the nature of the issue under consideration. Kumho, at 1175.
Three distinct aspects of Dr. Jacir’s letter raise issues of reliability: first, his apparent assumption that Eric Nolin experienced “a sudden increase in intra-abdominal pressure that was caused by the accident”; second, his implicit assertion that such an experience could cause the failure or disruption of a fundoplication as a general matter; and third, his opinion that it did so in this case.
As to the first of these, Dr. Jacir’s letter provides no hint of the source or basis of his factual assumption. The records provided in connection with this motion include no indication that Nolin had any such experience. To the contrary, they consistently reflect the absence of any sign of internal injury. The only possible source among the materials provided is Ms. Auger-Elkhoury’s deposition testimony that she observed “redness ... a little tender ... a few little bruises throughout his upper body . . . some indentations from the body jacket.” It is hardly apparent, however, that such observations indicate “a sudden increase in intra-abdominal pressure,” and Dr. Rosenberg’s affidavit states that they do not. If Dr. Jacir believes that they do, his letter does not say so. Without a foundation in the evidence for Dr. Jacir’s factual assumption, his opinion as to causation is obviously unreliable; indeed it has no relevance whatever to the case.
As to the second issue, Dr. Jacir does not identify the basis for his apparent view that a “sudden increase in intra-abdominal pressure” can cause disruption of a fundoplication. He cites neither any medical publication nor anything in his own training or experience, and offers no explanation or elaboration. Dr. Rosenberg attests to the absence of any support for this assertion in the medical literature and in his own experience. Neither any of the four factors identified in Daubert, nor any other factors indicate the reliability of this aspect of Dr. Jacir’s opinion.
Finally, Dr. Jacir offers no indication whatever of how he reaches his conclusion that the assumed sudden increase in pressure caused injury in this particular case. See Kumho at 1177. Although he acknowledges other causative factors, apparently both in general and in this case, he provides no analysis of the role of the various factors or the interaction among factors. He does not, for example, identify any change in the frequency or severity of Nolin’s reflux, or in his nutritional status, immediately after the collision. Indeed the only fact he cites as apparently bearing on his opinion is that the collision preceded the surgery. This alone is obviously insufficient to show the reliability of his opinion as to causation.
In response to the defendants’ argument under Daubert, the plaintiffs do not attempt to defend the reliability of Dr. Jacir’s letter. Their position, rather, is that G.L.c. 233, §79G, exempts records within its scope from all evidentiaiy requirements, including the Daubert rule. As the cases discussed supra indicate, however, the statute provides only a limited exception to the hearsay rule; it does not eliminate the entire law of evidence from application to the records it covers. Here, even if that statutory exception to the hearsay rule applied to Dr. Jacir’s letter, the letter would not meet the reliability requirement of Daubert, and would be inadmissable on that independent ground.
CONCLUSION AND ORDER
For the foregoing reasons, the Defendants’ Motion in Limine is ALLOWED. At argument on this motion, counsel indicated a likelihood that, if the motion were allowed, they would stipulate that the plaintiffs lack evidence that Nolin incurred medical expenses resulting from the collision in excess of the statutory threshold, so that defendants would be entitled to judgment as a matter of law. Accordingly, it is hereby ORDERED that, within fourteen days of this date, counsel submit a joint status report indicating whether they have so stipulated, and, if so, amotion for entry ofjudgment. If counsel are unable to stipulate, defendants may serve a motion for summary judgment within fourteen days thereafter.

 In support of their motion, the defendants submitted copies of the following materials as attachments to their memorandum: the letter they seek to exclude, as provided to them in discovery; an affidavit of their expert witness, Dr. Stanley Rosenberg; the plaintiffs’ supplemental answers to the defendants’ expert witness interrogatories; medical records from the New England Medical Center relating to surgery on July 25, 1996; medical records from the Beverly Hospital Emergency Department for the date of the collision; records of the Northeast Emergency Medical Services reflecting emergency medical services immediately following the collision; records of Home Health VNA reflecting services provided on the date of the collision and subsequent days; and excerpts from the deposition of Mary Auger-Elkhoury, identified as Nolin’s “care provider,” regarding her observations on the date of the collision. In opposition, the plaintiffs submitted a memorandum of law, but provided no additional evidentiary materials. Accordingly, the Court considers this motion based on the facts as they appear in the materials submitted by the defendants.

 The following exchange appears at the top of page 64 of Auger-Elkhouiy’s deposition: “Q. What question did you ask? A. If the tray slammed into him when the van went over and he answered yes.” Because counsel have not provided the previous pages of the deposition transcript, it is difficult for the Court to determine the context of this exchange, particularly whether it bears any relation to the redness the witness describes. The plaintiffs’ memorandum in opposition to the motion does not assert any reliance on this testimony.

 The materials submitted do not indicate whether any such episodes have occurred since that date.

 After service of the defendants’ motion, plaintiffs’ counsel obtained from Dr. Jacir two new versions of his letter, each containing a slight change of wording from the first letter, with *156 the changes apparently intended to respond to certain aspects of the defendants’ arguments. The second version, dated April 16, 1999, inserts, after the reference to the fundoplication having been redone, “by that I mean a Roux-en-Y-feeding jejunostomy.” Later in the text this version substitutes “the Roux-en-Y-feeding jejunostomy” for “the redoing of the fundoplication.” The third version, dated April 23, 1999, inserts “by me” after references to the procedure having been done, apparently to clarify that Dr. Jacir was Nolan’s treating physician at the time of the surgery.