COMMONWEALTH vs. SEAN DYER.

No. 09-P-253.

Middlesex. March 15, 2010. - September 29, 2010.

Present: KANTROWITZ, BROWN, & SIKORA, JJ.

*Constitutional Law,* Confrontation of witnesses, Assistance of counsel. *Practice, Criminal,* Confrontation of witnesses, Instructions to jury, Assistance of counsel. *Evidence,* Medical record, Intoxication, Testimonial statement, Blood sample, Expert opinion. *Motor Vehicle,* Homicide.

At the trial of an indictment charging felony motor vehicle homicide, G. L. c. 90, § 24G(*a*), the admission in evidence of hospital records containing the defendant's blood alcohol level test results, without the testimony of the analyst responsible for processing the hospital blood sample, did not violate the defendant's right of confrontation, where the test results, which were generated for evaluation and treatment purposes, were not testimonial and were properly admissible under G. L. c. 233, § 79, the hospital records statute [853-856]; further, the judge properly admitted in evidence testimony by the supervising physician that the defendant's blood alcohol level was consistent with her physical observations of the defendant, and that the blood draw and analysis performed at the hospital were neither improper nor wrong [856-857].

At a criminal trial, the judge correctly instructed the jury on the elements of felony motor vehicle homicide. [857]

At the trial of an indictment charging felony motor vehicle homicide, G. L. c. 90, § 24G(*a*), defense counsel's submission of evidence that the vehicle driven by the defendant had numerous mechanical defects did not constitute ineffective assistance, where the defects served as an alternative explanation for the defendant's failure to reduce the speed of the vehicle prior to the collision. [857-858]

INDICTMENT found and returned in the Superior Court Department on March 24, 2005.

The case was tried before *Peter M. Lauriat,* J.

*Jose Luis Serpa* for the defendant.

*Casey E. Silvia,* Assistant District Attorney, for the Commonwealth.

SIKORA, J. The defendant appeals from a Superior Court jury

conviction of felony motor vehicle homicide, G. L. c. 90, § 24G(*a*). He challenges the admission in evidence of medical records revealing his blood alcohol content level and certain physician testimony, the judge's jury instructions, and his trial counsel's effectiveness. We affirm.

*Background.* The jury heard the following evidence, which we supplement as necessary within our analysis of each issue. At about 7:30 P.M. on January 21, 2005, defendant Sean Dyer, then eighteen years old, picked up his friends in his father's car to attend a drinking party in Woburn. At around 11 P.M., he drove to a 7-Eleven store parking lot to meet seventeen year old Cassandra Donovan (victim). While awaiting her arrival, the defendant encountered a friend, Nicholas Benson, to whom the defendant appeared "really, really drunk."[1] According to Benson, the defendant told him that he had attended a party and had consumed "a lot of beers" and had had "a real lot to drink." Benson offered to drive the defendant, but he refused. Shortly thereafter, the victim arrived and joined the defendant, who "slammed [the car] into drive" and spun the tire wheels as he sped out of the lot.

About ten minutes later, the defendant's vehicle collided with a telephone pole; the impact caused severe damage to the passenger's side of the vehicle but little to the driver's side. Although the defendant suffered no apparent harm, the victim, who was trapped within the vehicle, sustained severe injuries, was unresponsive, and bled profusely from the head.

Just after the crash, two teenagers happened upon the accident and observed that the defendant appeared very confused. One of the teenagers, who detected an odor of alcohol emanating from within the vehicle, testified that the defendant admitted that he had "had a few." Soon afterward, police and rescue workers arrived. At least two officers noticed that the defendant smelled strongly of alcohol and that he stumbled and was unsteady on his feet. In response to the officers' questions, the defendant denied driving the vehicle and refused to reveal the victim's identity.

---

[1] The defendant had been slurring his words, had glassy eyes, and had difficulty holding his head up.

Rescue workers arrived at the scene and viewed the defendant sitting or standing at the curb. From their observation of the extensive damage to the vehicle and of the severity of the injuries to the victim, they suspected the defendant to be a potential trauma victim requiring the protocol of a thorough physical examination at the hospital. They immobilized him on a stretcher and placed him in an ambulance.[2]

Both the defendant and the victim were transported to the Massachusetts General Hospital (hospital). There, the victim died at about 2 A.M. Both en route to and at the hospital, the defendant was agitated and was described as exhibiting "combative" and "standoffish" behavior. Emergency room physician-supervisor Dr. Kriti Bhatia treated the defendant, along with a team of about five or six emergency room physicians, nurses, and medical technicians. She noticed that the defendant's breath smelled of alcohol and that he was alert but disoriented as to time. She ordered urine and blood tests in addition to X-rays and computer tomography (CT) scans for his evaluation and treatment. Emergency room personnel drew five vials of the defendant's blood and forwarded them to the hospital's laboratory. The hospital analysis revealed that the defendant's blood alcohol content by weight was .17 percent. G. L. c. 90, § 24G(a).

On January 25, 2005, the police obtained a warrant for the defendant's hospital records and the remaining vials of blood drawn. On the next day, they transferred the vials to the State police crime laboratory (crime lab). Analysis of the defendant's blood showed a blood alcohol level of .11 percent. The discrepancy between the hospital's result of .17 percent and the crime laboratory's .11 percent may have resulted from improper capping of the vial.[3]

At the conclusion of trial, a Superior Court jury found the defendant guilty of felony motor vehicle homicide.

---

[2]The jury received medical testimony that the assessment of head injury does not relate to intoxication and that an individual may still be intoxicated but yet show no sign of head injury.

[3]Improper capping and inadequate refrigeration of the vial of blood could result in a lower blood alcohol reading. Conversely, bacteria contamination of the vial of blood could result in an increased blood alcohol count.

*Analysis.* 1. *Evidence of blood alcohol content.*[4] The defend-ant maintains that the admission of the hospital blood alcohol result violated his right of confrontation under the United States and Massachusetts Constitutions because the analyst responsible for processing the hospital blood sample was unavailable for cross-examination.[5] However, because the blood alcohol content result was not testimonial, the defendant's right of confrontation suffered no breach. He was not entitled to cross-examine the analyst responsible for it.[6]

[4]The defendant filed a motion in limine to exclude his blood alcohol test results, which the trial judge denied. The defendant also objected to the admission of the readings at trial.

[5]The defendant pursues two other arguments in support of his general contention that the blood alcohol level results should have been excluded. First, he argues that the blood analyses done by the hospital and the crime labs, both of which were based on the original blood draw at the hospital, were unreliable because the hospital sampling process did not comply with certain statutory and regulatory requirements. Second, he contends that the blood alcohol results were unreliable because the values from the two analyses were disparate and because the chain of custody for the hospital blood sample was not established. These contentions lack merit.

The defendant's first argument fails because the cited statutory and regula-tory authorities do not support his contention. General Laws c. 90, § 24(1)(*e*), makes admissible the results of a blood alcohol test to show whether a defendant was operating while under the influence of intoxicating liquor. Its provisions relating to testing at the direction of the police do not apply here because Dr. Bhatia ordered the blood alcohol assessment as part of a standard treatment protocol, and not at the request or order of any law enforcement officer. Ad-ditionally, the regulations cited by the defendant relate only to the certification requirements set forth for chemical analysts working for the Department of State Police. See 501 Code Mass. Regs. §§ 2.29, 2.30 (2005). The references in those regulations to G. L. c. 90, § 24(1)(*e*) (subsequently amended) apply only to testing done at the behest of law enforcement; they do not apply, and have no bearing on, testing completed by medical personnel in hospitals.

The defendant's second argument fails also. "Hospital records, by their nature, are presumed to be reliable." *Commonwealth* v. *Riley*, 22 Mass. App. Ct. 698, 702 (1986). See Mass. G. Evid. § 803(6)(B) (2010). The defendant does not argue that the blood alcohol content reports are facially unreliable. Contrast *Commonwealth* v. *Johnson*, 59 Mass. App. Ct. 164, 168-169 (2003) (hospital records that are facially unreliable because of qualifying language within the record not admissible under G. L. c. 233, § 79). Moreover, "[a]l-leged defects in the chain of custody usually go to the weight of the evidence and not its admissibility." *Commonwealth* v. *Viriyahiranpaiboon*, 412 Mass. 224, 230 (1992). Similarly, the disparity in the results from the hospital and crime lab analyses go to their weight, not their admissibility.

[6]The Commonwealth did produce for direct and cross-examination a State

A defendant's right to confront his accusers is guaranteed by the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. That right takes effect when a witness " 'bear[s] testimony' " against the defendant. *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2531 (2009), quoting from *Crawford* v. *Washington*, 541 U.S. 36, 51 (2004). "A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Melendez-Diaz, supra.* The United States Supreme Court currently describes the necessary testimonial character of adverse information in the following terms:

> "Various formulations of this core class of testimonial statements exist: *ex parte* in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

*Ibid.*, quoting from *Crawford, supra* at 51-52.

Medical records generated for evaluation and treatment purposes do not constitute testimonial evidence triggering a constitutional right of confrontation. The *Melendez-Diaz* Court expressly excluded medical records from "this core class of testimonial statements." *Id.* at 2531, 2533 n.2 ("medical reports created for treatment purposes . . . would not be testimonial under our decision today"). With particular regard to medical records of blood alcohol level test results, Massachusetts courts

police crime lab analyst involved in the creation of the second alcohol content figure of .11 percent.

In a conclusory statement, the defendant asserts a violation of his due process rights. However, this undeveloped reference does not amount to a recognizable argument required by Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

have previously concluded that such information implicates no right of confrontation. See *Commonwealth* v. *Lampron*, 65 Mass. App. Ct. 340, 344-346 (2005) (finding certain medical record drug screening notations not testimonial because created for patient evaluation and treatment). See also *Commonwealth* v. *Riley*, 22 Mass. App. Ct. 698, 700-702 (1986) (no right to confrontation where doctor ordered blood alcohol level test for treatment purposes). Medical records do not have testimonial character because they are procured neither for litigation purposes nor through law enforcement interrogation, nor are they made in anticipation of use in the investigation or prosecution of a crime. See *Lampron*, *supra* at 345-346.

At trial, Dr. Bhatia explained her role in the emergency room and her approach to evaluation and treatment of the defendant when he arrived at the hospital. As chief resident of the emergency room, she oversaw the entire emergency department and acted as the "trauma captain, . . . in charge of the entire evaluation of the patient." She stated that she "coordinates the entire team [of emergency physicians, nurses, and other medical technicians] in terms of taking care of the patient and plans the tests that are necessary, diagnostic tests, both radiographically as well as laboratory wise."

Based upon hospital trauma protocol, information of possible alcohol involvement, and her own clinical observations of a patient, she would order a series of CT scans and blood work as the normal course of treatment for a trauma patient in the circumstance presented by this case. Finally, she confirmed that no police officers were present in the emergency room during the evaluation and treatment of the defendant. She elaborated further that she would refuse to conduct any medical test or procedure if so requested or ordered by a police officer because her role is limited to offering medical care to her patients.[7]

---

[7]In response to questions from the prosecutor, Dr. Bhatia testified as follows:

*Q.:* "If there was a police officer ordering you to take blood, would you have done that?"

*A.:* "No."

*Q.:* "Why is that?"

*A.:* "Because my job is [to] take care of the patient, and in fact, every

Since the right of confrontation presented no bar to the admission of the hospital's blood alcohol test result without confrontation of an analyst, it was admissible under G. L. c. 233, § 79. The statute, as appearing in St. 1957, c. 200, provides, "Records kept by hospitals [as required by statute] . . . may be admitted . . . as evidence in the courts of the commonwealth so far as such records relate to the treatment and medical history of such cases." The statute "in effect provides an exception to the hearsay rule which allows hospital records to be admitted to prove the truth of the facts contained therein, in so far as those facts relate to treatment and medical history." *Riley,* *supra* at 700, quoting from *Bouchie* v. *Murray,* 376 Mass. 524, 527 (1978). As Dr. Bhatia's testimony demonstrates, she utilized the blood alcohol content test results exclusively for her medical evaluation and treatment of the defendant. Hospital records of blood tests showing intoxication levels have been routinely admitted in prosecutions for operating under the influence of intoxicating liquor. See *Commonwealth* v. *Dube,* 413 Mass. 570, 574 (1992); *Commonwealth* v. *Sargent,* 24 Mass. App. Ct. 657, 660-661 (1987); *Commonwealth* v. *Russo,* 30 Mass. App. Ct. 923, 925-926 (1991); and *Commonwealth* v. *McCready,* 50 Mass. App. Ct. 521, 524 (2000), citing *Riley, supra* at 700-701. Contrast *Commonwealth* v. *Sheldon,* 423 Mass. 373, 376-377 (1996) (hospital record of blood alcohol level not admissible because test not performed as part of hospital protocol or in conjunction with any medical treatment).

2. *Dr. Bhatia's testimony.* The defendant contends that the judge should have excluded Dr. Bhatia's (1) testimony on direct examination that the defendant's blood alcohol content of .17 percent was consistent with her "physical observations of the defendant with respect to alcohol consumption," and (2) testimony on redirect examination that the blood draw and analysis performed at the hospital were neither "improper" nor "wrong." The defendant also challenges her qualification as an expert witness upon the subject of the blood draw and analysis.

We find no error in Dr. Bhatia's testimony. First, the trial judge properly allowed her testimony about the significance of

time — not in this case — but any time a police officer is there, they are not involved in my evaluation of the patient. I just take care of the patient."

the blood alcohol content result and its consistency with her observation of the defendant. As an experienced emergency room physician, she was qualified to interpret such tests and was familiar with the signs of intoxication displayed by the defendant. Second, the trial judge properly allowed her to testify to the propriety of the blood draw and analysis based on her own observations, knowledge of the hospital protocols, and her review of the medical records. See *Commonwealth* v. *Nardi*, 452 Mass. 379, 388 (2008) ("[Medical] examiners, as expert witnesses, may base their opinions on (1) facts personally observed; (2) evidence already in the records or which the parties represent will be admitted during the course of the proceedings, assumed to be true in questions put to the expert witnesses; and (3) facts or data not in evidence if the facts or data are independently admissible and are a permissible basis for an expert to consider in formulating an opinion" [citations and quotation omitted]). Finally, the defendant has made no attack upon Dr. Bhatia's qualifications substantial enough to call into question the admissibility of her opinions.

3. *Jury instructions.* The judge correctly instructed the jury upon the elements of felony motor vehicle homicide. He closely tracked the definition of the offense contained in the Model Jury Instructions on Homicide 39 (1999), approved by the Supreme Judicial Court.[8] So did his elaborations upon the concepts of negligence and causation. *Id.* at 44-45. During deliberation he accurately answered the jury's request for clarification of the element of negligence.[9]

4. *Ineffective assistance of counsel.* The defendant argues for

---

[8]The judge described the requisite elements as follows: "First, that the defendant operated a motor vehicle. Second, that the operation of the motor vehicle occurred on a way to which the public has a right of access. Third, that while the defendant was operating a motor vehicle he had a percentage by weight of alcohol in his blood of eight one-hundredths or greater, or was under the influence of an intoxicating substance, in this case alcohol. Fourth, that the motor vehicle was operated in a reckless or negligent manner so that the lives or safety of the public might have been endangered; and fifth, that such operation caused the death of another person."

[9]The jury asked, "Does operating a vehicle when you have consumed alcohol and are under the influence of alcohol constitute negligence in and of itself? Does the above constitute one of the physical factors or conditions of negligence?"

The judge repeated a portion of his original charge upon the factors probative of negligence and explained further that operation of a vehicle after

the first time on direct appeal that his trial counsel, who is also his appellate counsel, performed ineffectively because he submitted evidence that the defendant's father's vehicle had numerous mechanical defects.[10] At trial, defense counsel suggested that the mechanical defects could have caused the brakes to fail immediately before collision with the telephone pole. In retrospect, the defendant now views the presentation of that hypothesis as ineffective assistance because it allowed the jury to infer that the defendant had negligently or recklessly known of the car's mechanical problems yet failed to correct them.

A claim of ineffective assistance should generally develop through a motion for a new trial. *Commonwealth* v. *Zinser*, 446 Mass. 807, 810 (2006), citing *Commonwealth* v. *Saferian*, 366 Mass. 89, 90 n.1 (1974). "[O]ur courts strongly disfavor raising claims of ineffective assistance on direct appeal." *Commonwealth* v. *Zinser, supra* at 811. Generally, the record on direct appeal will be inadequate. We make exception to this rule "when the factual basis of the claim appears indisputably on the trial record." *Ibid.*, quoting from *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994). "When arguably reasoned tactical or strategic judgments of counsel are called into question, such judgments must be shown to be manifestly unreasonable when made." *Commonwealth* v. *Henley*, 63 Mass. App. Ct. 1, 8 (2005). This case presents the exceptional instance in which the record on direct appeal enables an assessment of the specified ineffectiveness.

Counsel's strategic decision to offer evidence and argument concerning the car's mechanical problems was not manifestly unreasonable. The defects served as alternate explanation for the defendant's failure to reduce speed before hitting the telephone pole.

*Conclusion.* The trial judge's admission of the defendant's blood alcohol content produced by the hospital did not violate the defendant's right of confrontation. The judge properly allowed

consumption of alcohol or under the influence of alcohol does not constitute negligence in and of itself, but that evidence of consumption can join with other evidence as a factor toward proof of negligence. This guidance did not confuse or commingle the separate elements of impairment and negligence.

[10]The father testified that, when his car stalled during turns, the power steering was inoperable.

Dr. Bhatia's testimony about the defendant's appearance and the quality of the hospital's blood work. The trial judge's instructions to the jury were sound. Defense counsel was not ineffective.

*Judgment affirmed.*