## Commonwealth vs. Richard McLaughlin.

No. 09-P-1321.

Plymouth. October 1, 2010. - June 13, 2011.

Present: Trainor, Meade, & Sikora, JJ.

*Motor Vehicle,* Operating under the influence. *Evidence,* Hospital record, Blood alcohol test, Opinion, Hearsay. *Constitutional Law,* Confrontation of witnesses, Assistance of counsel. *Practice, Criminal,* Confrontation of witnesses, Hearsay, Assistance of counsel. *Witness.*

At the trial of a criminal complaint charging, inter alia, operating a motor vehicle while under the influence of intoxicating liquor, no substantial risk of a miscarriage of justice arose from the admission in evidence, pursuant to G. L. c. 233, § 79, of hospital records, which included a toxicology report showing the defendant's blood alcohol content to be more than three times the legal limit, where the blood alcohol test constituted part of a series of routine tests conducted by hospital staff for medical purposes, and therefore its admission did not contravene G. L. c. 233, § 79 [673-676]; and where the form certifying the records by the hospital record keeper constituted a nontestimonial authentication of records of nontestimonial information [676-678]; further, the absence of an objection to the admission of the records did not constitute ineffective assistance of counsel, given that such an objection would have been unmeritorious or futile [678].

At a criminal trial, no prejudice arose from the admission of police officers' testimony about descriptive information from unknown 911 telephone callers, where, even assuming that the information constituted hearsay, in light of the quantity and quality of properly admitted evidence of guilt, it could be said that the testimony exerted little or no effect on the verdicts [678-680]; further, the admission of the testimony did not deprive the defendant of his confrontation rights under either the Federal Constitution or State Constitution, where, given that the 911 telephone callers were alerting the police to an ongoing threat posed by a conspicuously dangerous driver, their statements were urgent and not testimonial [680-681].

A criminal defendant failed to demonstrate that a State trooper's testimony either implicitly admitted in evidence hearsay statements or resulted in a violation of the defendant's constitutional right of confrontation. [681-682]

Complaint received and sworn to in the Hingham Division of the District Court Department on November 4, 2005.

The case was tried before *Thomas S. Barrett,* J.

*William T. Harrington* for the defendant.

*Carolyn A. Burbine*, Assistant District Attorney, for the Commonwealth.

SIKORA, J. At the conclusion of a two-day trial, a District Court jury convicted the defendant, Richard McLaughlin, of operating under the influence of intoxicating liquor (OUI), G. L. c. 90, § 24(1)(*a*)(1), and of negligent operation to endanger, G. L. c. 90, § 24. By an immediately subsequent jury-waived trial, the presiding judge found the OUI offense to be the defendant's third. G. L. c. 90, § 24(1)(*a*)(1), fifth par.

On appeal, the defendant invokes the evolving Sixth Amendment confrontation doctrine generated by *Crawford* v. *Washington*, 541 U.S. 36, 51 (2004), and *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2531 (2009), against the application of one of the Commonwealth's most frequently used evidentiary statutes, G. L. c. 233, § 79. For both criminal and civil trials, that provision authorizes the discretionary admission of properly certified hospital records related to relevant issues of treatment and medical history. In addition, the defendant challenges the admission of the content of certain 911 telephone calls also as violative of his constitutional right of confrontation. Finally, he complains of ineffective assistance of trial counsel and of prejudicial violation of hearsay evidence standards. For the following reasons, we affirm the convictions.

*Background.* The Commonwealth built its case upon the testimony of civilian witness Sherry Goss, State Troopers Daniel Crespi and Matthew Waples, and toxicologist Kerri Donovan. The defendant did not present any witnesses.

1. *Testimony of Sherry Goss.* Goss finished her evening work shift in Boston at approximately 1:00 A.M. on October 25, 2005, and began her drive home to Brockton. As she moved southward on Route 93, she observed an automobile randomly alternating its speed and changing lanes. The car appeared to be a silver Mercedes-Benz.

The car struck a concrete barrier in the middle of the highway, and ricocheted to the right across all of the traffic lanes. As it continued southward onto Route 3, Goss called 911 by cellular telephone and reported the accident. The car continued to change speeds and shift lanes, and eventually slowed to a speed of approximately twenty miles per hour.

As Goss passed the car she read its license plate number. The driver appeared to be a male. She again called 911 and reported the license plate number to the dispatcher. She was unsure of the last digit of the number and gave the dispatcher two possibilities. Shortly afterward she left the highway.

2. *Testimony of Troopers Crespi and Waples.* Crespi received a dispatch at about 2:45 A.M. on October 25, 2005. As a result, he drove to Route 3 South. He was looking for a Mercedes-Benz sedan with a specific license plate number traveling in the southbound lanes. As Crespi reached an overpass above Route 3, he saw a sedan driving north in the southbound lanes of Route 3. He turned on his lights and siren and drove onto Route 3 North. Trees and bushes growing in the median blocked his view of the southbound lanes. He turned left into a cutout in the median and emerged onto Route 3 South. Before proceeding southward, he looked down the lanes and did not see a car traveling in the wrong direction. He proceeded several hundred feet southward and saw a Ryder truck stopped in the median.

Crespi pulled to the side of the highway, approached the truck on foot, and spoke with the driver. As he did so, he noticed another vehicle on the opposite side of the highway. It was straddling the breakdown lane and an adjacent embankment. As he crossed the highway toward the car, he radioed dispatch to report an accident.

The driver of the car, whom Crespi identified in court as the defendant, was unconscious. Crespi checked the defendant's vital signs; he had a pulse and was still breathing. His breath carried a strong odor of alcohol. The defendant's automobile was a gray Mercedes-Benz that had sustained serious damage to its passenger side. The make, color, and license plate number matched the description of the vehicle for which Crespi was looking when he drove onto Route 3.

Trooper Waples arrived shortly afterward. He had responded to the scene after receipt of a radio transmission from Crespi reporting the accident. Previously, Waples had received the same dispatch information as Crespi and had been searching Route 3 South for a silver or gray Mercedes-Benz with a specific license plate number. Upon arrival, Waples spoke with Crespi, approached the defendant's vehicle, and observed its make, color, and license plate number, all of which matched the

description of the vehicle relayed to him by dispatch earlier. Waples also checked the defendant's vital signs and smelled a strong odor of alcohol on the defendant's breath. Waples identified the defendant in court.

Emergency medical personnel then arrived and, with the "jaws of life," removed the defendant from his vehicle. They transported him to South Shore Hospital. Waples investigated the accident scene and then drove to the hospital to inquire whether medical personnel had tested the defendant's blood. He spoke with both doctors and nurses who were treating the defendant. He then returned to his barracks and drafted charges against the defendant for OUI and for negligent operation.

3. *Testimony of toxicologist Kerri Donovan.* At the conclusion of the testimony by the troopers, pursuant to G. L. c. 233, § 79, the Commonwealth introduced in evidence a copy of the defendant's hospital records and a signed form from a South Shore Hospital record keeper certifying "that the attached medical record is a true and accurate copy of the original documents." The records contained a toxicology report. The Commonwealth then called toxicologist Donovan to explain the significance of the report. She described the process by which blood analysts use a person's serum alcohol level to calculate blood alcohol content. From the defendant's hospital toxicology report, she described his ethanol serum level as 303 milligrams per deciliter. From that datum, she calculated that the defendant's blood alcohol content by weight on the night of the accident to have been between .256 and .270 percent, a level more than three times the legal limit. See G. L. c. 90, § 24(1)(*a*)(1), first par.

*Analysis.* 1. *Admission of the defendant's hospital records.* Trial defense counsel did not object to the admission of the hospital records. We therefore review the unpreserved alleged error for a substantial risk of a miscarriage of justice. See e.g., *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967); *Commonwealth* v. *Randolph,* 438 Mass. 290, 297-298 (2002). See also *Commonwealth* v. *Redmond,* 53 Mass. App. Ct. 1, 7-8 (2001) (unpreserved constitutional error typically reviewed under substantial risk of a miscarriage of justice standard).[1]

---

[1]The decision of *Commonwealth* v. *Vasquez,* 456 Mass. 350, 358-360 (2010), carves out an exception to this rule; other exceptions exist. None applies here.

The defendant assigns three errors to the uncontested admission of his hospital records under authority of G. L. c. 233, § 79. First, he contends that their admission violated the very terms of the statute because their measurement of his blood alcohol content effectively referred to the ultimate question of his criminal liability. Second, he argues that the unavailability of the hospital record keeper at trial for cross-examination upon the accuracy of the certification of the records deprived him of his right of confrontation under the Sixth Amendment to the United States Constitution. Finally, he characterizes trial defense counsel's failure to object to the admission of the medical records as constitutionally ineffective assistance of counsel.

The Commonwealth presented the OUI charge to the jury upon the independent alternative theories of (1) a per se violation by reason of a blood alcohol measurement of .08 percent or greater, and (2) impaired operation established by percipient testimony of witnesses. The jury delivered verdicts of guilt upon both versions of the offense. The defendant argues that the improperly admitted hospital toxicology report taints a finding of guilt under the per se theory and prejudicially affects any such finding under the alternative concept of impaired operation. See G. L. c. 90, § 24(1)(*a*)(1), first par.; *Commonwealth* v. *Colturi*, 448 Mass. 809, 817-818 (2007); *Commonwealth* v. *Douglas*, 75 Mass. App. Ct. 643, 651-653 (2009); *Commonwealth* v. *Filoma*, *ante* 16, 20-21 (2011).

a. *Statutory "question of liability."* In pertinent part, G. L. c. 233, § 79, as appearing in St. 1959, c. 200, provides as follows:

> "Records kept by hospitals . . . may be admitted by the court, in its discretion, as evidence . . . so far as such records relate to the treatment and medical history of such cases . . . *but nothing therein contained shall be admissible as evidence which has reference to the question of liability*"[2] (emphasis supplied).

---

[2]The statute serves two objectives: the authentication of medical records without the burdensome attendance of medical personnel and record keepers as witnesses; and the exemption of record contents from the common-law hearsay bar. *Commonwealth* v. *Francis*, 450 Mass. 132, 139 (2007). The criminal defendant and civil opponent remain free to challenge authenticity, accuracy, and inferences, upon specific grounds.

General Laws c. 90, § 24(1)(*a*)(1), as amended through St. 2003, c. 28, §§ 1 and 4, provides in relevant part that "[w]hoever [upon any public way] operates a motor vehicle with a percentage, by weight, of alcohol in their blood of eight one-hundredths or greater . . . shall be punished . . . ." The defendant proposes that proof of OUI guilt by a credible reading of .08 percent or greater effectively converts a hospital record containing such information to a reference to ultimate criminal liability forbidden by § 79.

We disagree. Objectively determinable facts resulting from medical tests and procedures conducted for diagnostic and treatment purposes and appearing in hospital records submitted under the statute may obviously bear on the ultimate question of civil or criminal liability but do not constitute improper allegations, opinions, or conclusions about liability. Subjective impressions or expressions about fault or guilt may not come in through such records. Trial judges will typically filter them out of the records. That material constitutes the forbidden "reference to the question of liability." See *Commonwealth* v. *Dargon*, 457 Mass. 387, 394-395 (2010), and cases cited. See Mass. G. Evid. § 803(6)(B) & note at 260-262 (2011). By contrast, objective data constitute reliable information helpful to the fact finder upon issues of a technical medical nature. The test is the distinction between "a conclusory fact central to the jury's inquiry" and "physical observations from which inculpatory inferences flow." *Id.* at 395, quoting from *Commonwealth* v. *Baldwin*, 24 Mass. App. Ct. 200, 202 (1987).

The blood alcohol test reading belongs to the latter category of "physical observations." The decisional law preceding the creation of per se guilt by the 2003 amendments remains in full force. Under it, "[t]he statute has long been construed to permit the admission of a record that relates directly and primarily to the treatment and medical history of the patient, 'even though incidentally the facts recorded may have some bearing on the question of liability.' " *Commonwealth* v. *Dube*, 413 Mass. 570, 573 (1992), quoting from *Leonard* v. *Boston Elev. Ry.*, 234 Mass. 480, 482-483 (1920). See Mass. G. Evid. § 803(6)(B), *supra.* Blood alcohol tests are admissible so long as their purpose was medical diagnosis or treatment. See *Commonwealth*

v. *Dube, supra* at 574 (results of "physician-ordered [blood] tests" are admissible); *Commonwealth* v. *Riley*, 22 Mass. App. Ct. 698, 700-701 (1986) (physician-ordered blood test admissible); *Commonwealth* v. *Sargent*, 24 Mass. App. Ct. 657, 660-661 (1987) (results admissible because blood test taken pursuant to hospital's routine procedures); *Commonwealth* v. *Dyer*, 77 Mass. App. Ct. 850, 856 (2010) (same). Contrast *Commonwealth* v. *Sheldon*, 423 Mass. 373, 376-377 (1996) (blood test inadmissible because the test was not intended "to assist in the achievement of any medical goal"). The limiting language of § 79 excludes gratuitous or incompetent references to criminal and civil liability; it does not exclude data resulting from medically purposeful treatment. Defendants may seek redaction of improper material, and they may call their own witnesses to challenge the accuracy of properly admitted medical information such as the blood alcohol reading.

In the present instance, the record itself indicates that the blood alcohol test constituted a part of a series of routine tests, all of which hospital staff conducted for medical purposes.[3] See *Commonwealth* v. *Russo*, 30 Mass. App. Ct. 923, 925-926 (1991) (defendant's hospital record established that hospital personnel performed blood test for purposes of treatment). The defendant offered no evidence challenging the apparent medical purposes of the blood test. The admission of the toxicology report as part of the hospital records did not constitute any violation of the statute.[4]

b. *Constitutional confrontation rights.* It is settled that the Sixth Amendment right to confrontation articulated in *Crawford* v. *Washington*, 541 U.S. at 51, and *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. at 2531, does not include an entitlement to cross-examine the authors of routine medical records

---

[3]The toxicology result appeared on a standard hospital form containing three panels of tests ("chemistry," "TDM/toxicology," and "urine drug screens") and twenty-one readings.

[4]A familiar canon of construction reinforces our conclusion that G. L. c. 90, § 24(1)(*a*)(1), and G. L. c. 233, § 79, operate compatibly. Whenever possible, courts will harmonize the provisions of related statutes so as to give each one effect within a consistent scheme. See *Commonwealth* v. *Hampe*, 419 Mass. 514, 518 (1995), and cases cited.

because "medical reports created for treatment purposes . . . would not be testimonial." *Melendez-Diaz* v. *Massachusetts, supra* at 2533 n.2. For the same result and reasoning, see *Commonwealth* v. *Lampron*, 65 Mass. App. Ct. 340, 344-346 (2005); and *Commonwealth* v. *Dyer*, 77 Mass. App. Ct. at 854-855. This court has reached the same result in the application of the Commonwealth's constitutional assurance of the right of confrontation set forth in art. 12 of the Massachusetts Declaration of Rights. *Commonwealth* v. *Riley*, 22 Mass. App. Ct. at 701-702.

In this instance, however, the defendant challenges not the introduction of the substance of the hospital records, but rather their certification by the hospital record keeper. He imputes a testimonial character to the certification of the accuracy of the record.

The certification form has some testimonial characteristics. The keeper of the records signed the form under the pains and penalties of perjury, and created the form in response to a subpoena. However, in *Melendez-Diaz* v. *Massachusetts, supra* at 2538-2539, the United States Supreme Court made an explicit exception for "a clerk's certificate authenticating an official record — or a copy thereof — for use as evidence." *Id.* at 2538. The Court acknowledged that this type of affidavit is "prepared for use at trial," but held that the confrontation clause does not apply because such an affidavit merely "certif[ies] to the correctness of a copy of a record" and does not "furnish, as evidence for the trial of a lawsuit, [an] interpretation of what the record contains or shows, or . . . certify to its substance or effect." *Id.* at 2539, quoting from *State* v. *Wilson*, 141 La. 404, 409 (1917).

It is clear that the certification form in the present case belongs within this categorical exception. The form certifies that the hospital furnished accurate copies of the defendant's medical records. The form does not vouch for the substance of those records as an accurate representation of the defendant's condition on the night of the accident.

In effect, the certification is doubly removed from a right of confrontation. It constitutes a nontestimonial authentication of

records of nontestimonial information. See *United States* v. *Ellis*, 460 F.3d 920, 927 (7th Cir. 2006) ("[g]iven [that hospital] records themselves do not fall within the constitutional guarantee provided by the Confrontation Clause, it would be odd to hold that the foundational evidence authenticating the [hospital] records do[es]"). See also *Commonwealth* v. *Zeininger*, 459 Mass. 775, 784 (2011) (record certifying the working condition of police breathalyzer machinery "rather than reflecting 'judgment and discretion' or 'expressions of opinion' of . . . [a] technician, merely signifies that the . . . procedures prescribed by regulation were satisfactorily performed"). The defendant has suffered no deprivation under either the confrontation clause of the Sixth Amendment or art. 12 of the Massachusetts Declaration of Rights.

c. *Ineffective assistance.* Consequently, the absence of an objection to the admission of the hospital records by defense counsel did not fall "measurably below [the performance] expected from an ordinary fallible lawyer" and did not "likely deprive[] the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). The absence of an unmeritorious or futile objection cannot constitute ineffectiveness. See e.g., *Commonwealth* v. *Achorn*, 25 Mass. App. Ct. 247, 253 (1988); *Commonwealth* v. *Beauchamp*, 49 Mass. App. Ct. 591, 609-610 (2000); and *Commonwealth* v. *Soares*, 76 Mass. App. Ct. 612, 616 (2010).[5]

2. *Hearsay issues.* The defendant argues that the testimony of Troopers Crespi and Waples describing the car for which they were searching on Route 3 constituted inadmissible hearsay information from unknown 911 telephone callers; that the admission of such information deprived him of his constitutional right to confront those unknown callers; and that Trooper

---

[5]At the time of the trial, no reported Massachusetts decision had addressed the defendant's statutory contention that the 2003 addition of the per se violation would render blood alcohol tests results inadmissible as references to ultimate criminal liability. The omission of a novel theory does not typically constitute performance below the level of the ordinary fallible lawyer. See *Commonwealth* v. *Norman*, 27 Mass. App. Ct. 82, 86-87, *S.C.*, 406 Mass. 1001 (1989).

Waples's account of his visit to the hospital and then to the barracks for the purpose of assembling a criminal complaint constituted so-called "back door" hearsay.

a. *The claim of 911 hearsay.* The prosecution may introduce "carefully circumscribed extrajudicial statements in criminal trials to explain the state of police knowledge." *Commonwealth* v. *Rosario*, 430 Mass. 505, 508 (1999). "However, even where properly constrained, 'testimony of this kind carries a high probability of misuse.' " *Commonwealth* v. *Tanner*, 66 Mass. App. Ct. 432, 439 (2006), quoting from *Rosario*, *supra* at 509. The testimony runs the risk of implicit communication to the jury of "incriminating statements that are otherwise inadmissible." *Tanner*, *supra*. Consequently, "even general evidence of extrajudicial conversations presented to show the state of police knowledge" should come into evidence only if "(1) the evidence is presented by a police officer on the basis of his own personal knowledge; (2) the testimony is strictly limited to 'facts required to establish the officer's state of knowledge'; and (3) the question of police knowledge is relevant and material to some live issue before the fact finder." *Ibid.*, quoting from *Commonwealth* v. *Rosario*, *supra* at 509-510. See *Commonwealth* v. *Rupp*, 57 Mass. App. Ct. 377, 383 (2003).

It is questionable whether the descriptive information furnished by anonymous 911 telephone callers came into evidence for its truth and therefore constituted hearsay or whether it came into evidence only as an explanation of police knowledge and therefore constituted nonhearsay. In an abundance of caution, we shall assume — without deciding — that the jurors may have received the information for its truth. In that event, the dispatch information related to the troopers may have exceeded the second of the above-enumerated *Rosario* limitations. The defendant acknowledges that, to explain the search along Route 3, the troopers could have testified narrowly that they had received dispatches reporting an erratic driver on that highway. The defendant contends that the description of the car by anonymous callers was, however, unnecessary. *Commonwealth* v. *Rosario*, *supra* at 509-510. Consequently, the defendant asserts, the troopers' testimony matching the defendant's car to that description was also superfluous. The admission of the anonymously

based 911 information would have been error.[6] Defense counsel preserved the issue by objection. We evaluate whether the admission of this information, if classified as hearsay, could constitute prejudicial error.

An error preserved by objection or motion is nonprejudicial "if we are sure that the error did not influence the jury, or had but very slight effect." *Commonwealth* v. *Graham*, 431 Mass. 282, 288, cert. denied, 531 U.S. 1020 (2000), quoting from *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).[7] In light of the quantity and quality of properly admitted evidence of guilt, we can confidently conclude that the claimed improperly admitted testimony exerted little or no effect upon the verdicts. The blood alcohol reading interpreted and explained by the toxicologist witness comprised overwhelming evidence of guilt under the per se theory. The troopers' description of the accident scene and of the aroma of alcohol supplied strong evidence under the theory of impaired operation. As to the conviction of negligent operation, the testimony of Sherry Goss described the prolonged and erratic driving of a silver Mercedes-Benz and its license plate number. Trooper Crespi testified to his observation of a sedan traveling north in the southbound lane of the highway. He testified also that, twenty to thirty seconds later, he arrived on the accident scene a short distance from the point of his first observation of the wrong-way driver, and found the defendant trapped in the driver's seat of a gray Mercedes-Benz. He too provided the license plate number to the jury. If there were error in the admission of the details of the anonymous 911 telephone calls, it was harmless.

b. *Confrontation.* Did the introduction of reference to statements from unknown 911 telephone callers deprive the defend-

---

[6]By this evaluation, we do not impute any fault to the witnesses. The subtleties of hearsay standards are difficult for even experienced attorneys.

[7]This straightforward formulation of the prejudicial error standard is the equivalent of the more convoluted expression also originating in *Kotteakos* v. *United States*, 328 U.S. 750, 764-765 (1946), and imported into Massachusetts case law through *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983), and *Commonwealth* v. *Flebotte*, 417 Mass. at 353: "But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected."

ant of his right to confrontation under either the Sixth Amendment or art. 12 of the Massachusetts Declaration of Rights?[8] Those provisions protect a defendant against the admission of out-of-court testimonial statements. Out-of-court statements "primarily aimed at enabling 'police assistance to meet an ongoing emergency' " are not testimonial. *Commonwealth* v. *Nesbitt*, 452 Mass. 236, 248 (2008), quoting from *Davis* v. *Washington*, 547 U.S. 813, 828 (2006). In these circumstances, the 911 telephone callers were alerting the police to an ongoing threat posed by a conspicuously dangerous driver. They were urgent, and not testimonial, communications. See *State* v. *Torelli*, 103 Conn. App. 646, 658-662 (2007) (911 telephone calls reporting erratic driving are not testimonial, citing *Davis* v. *Washington*, *supra* at 822). No constitutional error occurred.

c. *Backdoor hearsay*. Finally, the defendant challenges the admissibility of Trooper Waples's testimony that he visited the hospital, spoke with personnel treating the defendant, and then returned to his barracks to draft charges against the defendant. The defendant asserts that this account implicitly admitted hearsay statements in evidence before the jury because it suggested that hospital personnel had informed Waples that they had performed a blood test upon the defendant and had determined his excessive blood alcohol count. Relatedly, the defendant contends that the same implicit hearsay violated his constitutional rights to confront the hospital personnel.

Waples testified that he had visited the hospital to "[c]heck on [the defendant's] condition and to see if [the hospital staff] administered a blood test"; that he had spoken with doctors and nurses in the emergency room; and had then gone to the barracks. This testimony did not communicate to the jury that hospital personnel had completed a blood test or that they had learned of a result. It was not so suggestive as to amount to implicit hearsay. Finally, even if it were so suggestive, the eventual blood test results properly came into evidence and superseded any earlier

---

[8]The Commonwealth contends that Sherry Goss was the only 911 caller to report an erratic driver in a silver Mercedes-Benz sedan on Route 3 South. However, the record casts doubt upon that assumption. Crespi and Waples both testified that they received multiple dispatches originated by 911 telephone calls from individuals located between the towns of Braintree and Hanover.

improper suggestion. Consequently, no harmful backdoor hearsay occurred. No violation of a constitutional right of confrontation resulted.

*Judgments affirmed.*