J-A18038-24

2024 PA Super 221

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL MCCULLOUGH | : | |
| | : | |
| Appellant | : | No. 824 WDA 2022 |

Appeal from the Judgment of Sentence Entered July 11, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0005075-2019

BEFORE: OLSON, J., MURRAY, J., and BENDER, P.J.E.

OPINION BY BENDER, P.J.E.: **FILED: SEPTEMBER 24, 2024**

Appellant, Michael McCullough, appeals from the judgment of sentence imposed following his convictions for one count each of aggravated assault (18 Pa.C.S. § 2702(a)(1)), person not to possess a firearm (18 Pa.C.S. § 6105(a)(1)), carrying a firearm without a license (18 Pa.C.S. § 6106(a)(1)), and recklessly endangering another person (18 Pa.C.S. § 2705). After careful review, we affirm.

In the opinion prepared pursuant to Pa.R.A.P. 1925(a), the trial court gave a summary of the facts of this case, as follows:

> On March 4, 2019, authorities responded to a shooting in downtown Pittsburgh. The victim, Lawrence Toombs, was encountered laying on the sidewalk near the intersection of Liberty Avenue and Seventh Street with two bullet wounds in the left, upper chest. [N.T. Jury Trial, 7/1/22], at 43, 45-46. The suspect was described as a black male, wearing a black hoodie and blue jeans, carrying a large black garbage bag. [*Id.*] at 88. It was reported that the suspect fled towards the North Side. [Appellant]

matched the description and was detained on the Seventh Street Bridge near Isabella Street. [*Id.*] at 90. The jury was shown video footage of the shooting, still photographs of the shooting and video footage of the suspect's flight from the scene. Although gunshot testing residue of [Appellant's] left hand was inconclusive, testing of the right hand was positive for gunshot residue. [*Id.*] at 197.

Trial Court Opinion, 6/7/23, at 3.

Following his conviction of the above-mentioned charges, Appellant was sentenced to an aggregate term of 10 to 20 years of incarceration followed by a 2-year period of probation. Appellant did not file post-trial motions, but did file a timely notice of appeal. Pursuant to the order by the lower court, and following the granting of requests for additional time, Appellant filed a timely statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Thereafter, the trial court filed its opinion.

Appellant raises the following two claims in this appeal:

I.     Whether the trial court abused its discretion and/or erred by allowing the medical records and certification that the medical records were the victim's medical records when the certification was testimonial and in violation of the Confrontational [*sic*] Clause of the Sixth Amendment?

II.     Whether the trial court abused its discretion and/or erred by allowing redacted medical records into evidence when redacted medical records are not permitted to be entered into evidence under the medical records exception to the hearsay rule when the records were not a true and complete reproduction?

Appellant's brief at 6.

Appellant first argues that his rights to confrontation were violated when the Commonwealth failed to produce a witness at his trial who could testify that the copy of the victim's medical records that were admitted at trial were

true and accurate. Appellant stresses that he does not maintain that the medical records themselves are *per se* inadmissible; rather, he asserts that the Commonwealth was required to present testimony that the copy of medical records presented to the court was true and accurate. *Id.* at 21. Without the custodian of the records being available for cross-examination in open court, he maintains, his right to confrontation was violated and the records were inadmissible. *Id.* Moreover, Appellant argues that the certificate of authenticity attached to the records was made in anticipation of litigation and, as such, is "testimonial," further demonstrating that the medical evidence was inadmissible. *Id.*

Issues related to whether the admission of evidence violated an accused's rights under the Confrontation Clause are questions of law, for which our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Brown***, 185 A.3d 316, 324 (Pa. 2018). The Sixth Amendment's Confrontation Clause generally prohibits the admission of hearsay statements that are "testimonial" in nature. ***Crawford v. Washington***, 541 U.S. 36, 50-60 (2004). The Supreme Court declined to further define in ***Crawford*** what is meant by this term, but it did opine that such a statement could include the "functional equivalent" of *ex parte* in-court testimony, formalized testimonial materials, or a statement made under circumstances which would lead an objective witness to believe that it might be used at some later trial. ***See Commonwealth v. Thompson***, 314 A.3d 922, 926 (Pa. Super. 2024). Stated differently, testimonial evidence has a

- 3 -

"'primary purpose of creating an out-of-court substitute for trial testimony.'" *Commonwealth v. Banko*, 268 A.3d 484, 491 (Pa. Super. 2022) (quoting *Bullcoming v. New Mexico*, 564 U.S. 647, 669-72 (2011) (Sotomayor, J., concurring) (other citations omitted)). *See also Davis v. Washington*, 547 U.S. 813, 822 (2006) (stating that statements to police are nontestimonial when the primary purpose of the statement is to meet an ongoing police emergency; they are testimonial when the primary purpose is to establish or prove past events relevant to a criminal prosecution).

As noted by Justice Sotomayor, whether a statement is considered to be testimonial often is determined by looking at the purpose served by that statement. *Bullcoming*, 564 U.S. at 669. For example, in a driving-under-the-influence (DUI) prosecution where the charge is based upon the percentage of alcohol contained in one's blood, a toxicology report that identifies the alcohol percentage in the defendant's blood is testimonial because the information in the report serves to satisfy an element of the crime for which the defendant was charged, *i.e.*, the defendant's blood alcohol content (BAC). *Thompson*, 314 A.3d at 926-27. In such a case, it would "violate[] the Confrontation Clause to admit a toxicology report with the testimony of the custodian of records but not the laboratory technician who performed the test." *Id.* at 927. Similarly, an autopsy report compiled by a medical examiner in consultation with the district attorney has been deemed testimonial because it is designed to provide an opinion as to whether death occurred as a result of a criminal act. *Id.*

Nonetheless, if a statement is not intended to be used to prove an element of a crime, the statement may be non-testimonial. Examples of this would include calibration and accuracy certificates for Breathalyzers or other devices that test the alcohol content of someone's breath; because such certificates do not provide information about any particular defendant or of any particular case, they do not establish an element of any crime, and are therefore non-testimonial. *See Commonwealth v. Dyarman*, 73 A.3d 565, 569 (Pa. 2013). Instead, these certificates merely "certif[y] the reliability of the device." *Id.* A factual summary added to a report generated by a gunshot detection system and sent to police would also be non-testimonial because "its primary purpose is to help police respond to an emergency, not to serve as proof at trial." *Thompson*, 314 A.3d at 927.

> Here, Appellant explains his argument as follows:

> The [University of Pittsburgh Medical Center (UPMC)] custodian of records' certificate, which attests that the copy of the medical records is a complete and accurate reproduction of the original records belonging to the victim, is an affidavit which "belong[s] to the core class of testimonial statements" as expressed by the Supreme Court of the United States in *Crawford* and *Melendez-Diaz*[1] and thus violates Appellant's Sixth Amendment right to confrontation.

Appellant's brief at 30. Appellant stresses that the certificate in question here was prepared to prove the authenticity of a copy of the victim's medical records in lieu of the originals and without requiring the custodian to give preliminary testimony. Thus, Appellant asserts, this certificate is a "solemn

---

[1] *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009).

declaration or affirmation made for the purpose of establishing or proving some fact," and it was the functional equivalent of trial testimony. *Id.* at 32. Consequently, he insists it was inadmissible here and that there was no demonstration at trial that the copies of the victim's medical records were authentic and accurate reproductions of the originals.

Looking at the purpose served by the evidence as we are instructed to do, we note that the records in question are medical records relating to treatment given to the non-testifying victim for injuries suffered in the shooting. Appellant was charged with aggravated assault, which required, for conviction, that the fact-finder conclude that Appellant caused serious bodily injury. *See* 18 Pa.C.S. § 2702(a)(1). Because the victim did not testify, the prosecutor sought to introduce the victim's medical records and accompanying certification to establish the victim's injuries. The term "serious bodily injury" is defined by statute as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. However, there is no requirement that serious bodily injury be proven by medical records. *Commonwealth v. Russell*, 209 A.3d 419, 426 (Pa. Super. 2019) (finding sufficient evidence for the serious bodily injury element of aggravated assault based upon the facts of the assaults; no medical records are discussed as evidence of the crime).

In considering whether the medical records are testimonial, we note that, generally speaking, medical records are the objective recordings of test

results and the medical practitioner's observations. They are unlike an autopsy report that contains an opinion regarding the legal cause of death as resulting from an accident, homicide, or natural causes; instead, these records are a factual account of what medical practitioners did to treat the victim's injuries. Indications made in the records show procedures performed and the victim's responses to treatment. As objective information, the records are not testimonial for our purposes. *See, e.g.*, *Thompson*, *supra* (holding that data extracted from an event data recorder in an automobile is not testimonial for Confrontation Clause purposes because, *inter alia*, the data is an objective reporting of the inner workings of the car and thus does not include opinion testimony and the primary purpose of recording the data was not for future litigation); *Commonwealth v. Banko*, 268 A.3d 484, 490-91 (Pa. Super. 2022) (holding that BAC test results that were performed as a part of the patient's medical treatment, could be testified to by a lab supervisor rather than the technician that performed the test without being a violation of the Confrontation Clause because the BAC results were not performed for litigation purposes and did not prove an element of the offense; thus, the results were not testimonial ).

This conclusion has support in our precedent. For example, in *Carter*, *supra*, our Supreme Court considered whether the admission of a police crime lab report at trial, without testimony from the person who created the report, was a violation of the Confrontation Clause. Carter had been charged with possession with the intent to deliver a controlled substance and, at trial, the

prosecution admitted, over objection, the crime lab report which indicated that the material seized from Carter was 11.6 grams of cocaine. *Carter*, 932 A.2d at 1262. Carter later filed a petition under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546, claiming court error in admitting the lab report as an exception to the hearsay rule, and asserting that counsel was ineffective for failing to raise the issue on direct appeal. *Id.* The Superior Court *en banc* remanded for a new trial, holding that the lab report was not a business record admissible into evidence pursuant to an exception to the hearsay rule because it was prepared in anticipation of litigation; the Court held that admitting the report into the record violated Carter's rights to confrontation. *Id.* at 1263. The *en banc* panel further found that admission of the report was not harmless error. *Id.*

Our Supreme Court reversed, concluding that the trial court had properly admitted the crime lab report under the "business record exception" of the hearsay rule. *Carter*, 932 A.2d at 1264. The Court found that because "the regular practice of the crime lab [was] to generate such reports," the report is the type of record encompassed by the business-records exception to the rule. *Id.* While noting that "even if a record falls within the business record exception, its admission may still violate the Confrontation Clause[,]" the Court stressed that "the report indicated the substance seized from [Carter] was 11.6 grams of cocaine; this is not an opinion, but rather the recording of a test result." *Id.* at 1265. Any opinion held by the expert preparing the report became irrelevant once the report was complete; "the

test result was objective and stood on its own, despite any subjective impressions [of the forensic scientist.]" *Id.* at 1265-66. The report was not deemed to be testimonial.

To be fair, Appellant is not arguing that the medical records themselves are testimonial; instead, his argument centers on the certificate that accompanies the records. At trial, Appellant argued that the Commonwealth was required to present a witness who would testify to the accuracy and authenticity of the records, and the certificate was not an adequate substitute for a live witness that could be subject to cross-examination. N.T. Jury Trial at 209-16. The trial court denied defense counsel's request to suppress the records, stating that, due to the nature of the information contained in the records, they were non-testimonial. *Id.* at 218.

Appellant suggests that the certificate signed by the records custodian when transmitting the medical records to the prosecutor was a document prepared in anticipation of litigation, making it testimonial and subject to Confrontation Clause analysis. Appellant argues that this affidavit is "a solemn declaration or affirmation made for the purpose of establishing or proving some fact" and, thus, it falls within the core class of testimonial statements. Appellant's brief at 32. Appellant concludes his claim by noting that the Commonwealth had never proved that the signer of this certificate was unavailable, and that he had never had the opportunity to cross-examine the declarant. *Id.* Thus, he maintains, a new trial is in order.

We do not agree. Our courts have already ruled that calibration and accuracy certificates for breath testing machines are non-testimonial, and thus could not provide the basis for reversal of a DUI conviction on Confrontation Clause grounds. *Dyarman*, *supra*. In evaluating a challenge similar to Appellant's in the case at bar, our Supreme Court found that "the calibration and accuracy certificates did not establish an element of the offense, and were prepared without knowledge of any particular case or for use in any particular trial." *Dyarman*, 73 A.3d at 569. Instead, the certificates were intended to establish the reliability of the device. *Id.* As such, the certificates were non-testimonial in nature and their admission into evidence did not violate the appellant's Confrontation Clause rights. *Id.* Accordingly, we also find that there was no Confrontation Clause violation by admitting the records custodian's certificate in this case. *Id.*

Our conclusion mirrors results from other jurisdictions. For example, in *Commonwealth v. McLaughlin*, 948 N.E.2d 1258 (Mass. App. Ct. 2011), the Massachusetts appeals court considered whether blood alcohol tests were inadmissible on Confrontation Clause grounds. The court stressed that the medical records in question contained objectively determinable facts resulting from medical tests and procedures, and that they were conducted for diagnostic and treatment purposes and appeared in hospital records. *Id.* at 1263. The blood alcohol tests were conducted as a part of a series of routine procedures done for medical purposes. *Id.* As for the certification by the hospital records custodian, the Massachusetts court cited *Melendez-Diaz* for

- 10 -

the proposition that a clerk's certificate authenticating an official record, while prepared for use at trial, "merely certifies to the correctness of a copy of a record and does not furnish, as evidence for the trial of a lawsuit, an interpretation of what the record contains or shows, or … certify to its substance or effect." **McLaughlin**, 948 N.E.2d at 1265 (cleaned up). As it "does not vouch for the substance of those records[,]" but merely certifies that the hospital furnished accurate copies of records, the certificate was not testimonial. **Id.** Accordingly, there was no Confrontation Clause violation. **Id. See also United States v. Ellis**, 460 F.3d 920 (7th Cir. 2006) (finding that medical records, and the accompanying certificates that attested to the records' authenticity, were non-testimonial and their admission did not violate **Crawford**). Appellant's first issue does not warrant relief.

In his second, somewhat related claim, Appellant argues that the trial court abused its discretion when it permitted a redacted copy of the victim's medical records to be admitted at his trial. The use of medical records at trial is governed by 42 Pa.C.S. § 6151, which provides:

> [m]edical charts or records of any health care facility licensed under the laws of this Commonwealth that are susceptible to photostatic reproduction may be proved as to foundation, identity and authenticity without any preliminary testimony, by use of legible and durable copies, certified in the manner provided in this subchapter by the employee of the health care facility charged with the responsibility of being custodian of the originals thereof. These copies may be used in any trial, hearing, deposition or other judicial or administrative action or proceeding, whether civil or criminal, in lieu of the original charts or records which, however, the health care facility shall hold available during the pendency of the action or proceeding for inspection and comparison by the

court, tribunal or hearing officer and by the parties and their attorneys of record. This subchapter does not apply to an X-ray film or any other portion of a medical record which is not susceptible to photostatic reproduction.

42 Pa.C.S. § 6151. UPMC is undoubtedly a health care facility licensed under Pennsylvania law.

At Appellant's trial, the Commonwealth introduced a sealed copy of the victim's unredacted medical records on a computer disc along with a redacted, paper copy to be used in open court. N.T. Jury Trial at 224-32. The paper copy had redacted personal information related to the victim, Lawrence Toombs. *Id.* at 231. Appellant argues in his brief to this Court that any alteration or redaction in the records makes them inadmissible under 42 Pa.C.S. § 6152(d), which applies to the certificate of the medical examiner and states, "The copies of records for which this certification is made are true and complete reproductions of the original or microfilmed medical records which are housed in (name of health care facility)." 42 Pa.C.S. § 6152(d). Specifically, Appellant argues:

> In this case, the custodian of record agreed that the records were accurate. However, after the custodian of record signed the certification, the records were changed and altered. The Commonwealth and the trial court said that because alterations to a document occurred for a good reason, authentication was satisfied and the redacted medical records could be admitted into evidence. Appellant strongly disagrees.

Appellant's brief at 44.

Notably, Appellant cites to no caselaw which holds that redaction of personal identification information in medical records is impermissible. Our

- 12 -

research has also found no case directly on point in this Commonwealth. Yet we note that our courts have recognized that redaction of certain information protects the privacy concerns of individuals in different contexts. For example, in the context of mental health records, our Supreme Court recognized that "confidentiality of mental health records is the *sine qua non* of effective treatment." ***Zane v. Friends Hosp.***, 836 A.2d 25, 33 (Pa. 2003). Moreover, Pennsylvania's Right-To-Know Law, 65 P.S. §§ 67.101-67.3104, specifically provides for redaction of information not subject to public disclosure. 65 P.S. § 67.706. ***See also*** Pa.R.J.A. No. 4014 (providing for the redaction of personal data identifiers in court transcripts). Many Pennsylvania counties also have local rules of procedure which detail redacting information for use at trial.

While Pennsylvania case law has not addressed the appropriateness of a redaction of medical records in the context of a criminal trial, other jurisdictions have done so and found the redactions were appropriate. For example, in Ohio, a doctor was charged with theft and fraud against insurance companies in connection with his illegally prescribing drugs. ***State v. McGriff***, 672 N.E.2d 1074 (Ohio Ct. App. 1996). Prior to trial, the trial court ruled that the prosecution was prohibited from using the doctor's medical records as evidence of his wrongdoing due to the privacy concerns of the patients involved in the contents of those records. ***Id.*** at 1075. The state appealed, and the court of appeals reversed, finding:

> The relevant and incriminating information, if any, contained in the patient records would be disclosed only to the extent needed to prosecute the defendant. Redaction of the records through erasure or concealment of the patients' names and addresses and other information inapplicable to the prosecution of the charged crimes would ensure that each patient's interest in confidentiality and privacy is protected without frustrating the state's interest in prosecuting illegal drug activity. Accordingly, in this case the state should be permitted to use the medical records, so long as the trial court conceals the names and addresses of the patients in consideration of their privacy rights.

*Id.* at 1075-76. ***See also State v. Baptist Mem'l Hosp.-Golden Triangle***, 726 So.2d 554, 559-60 (Miss. 1998) (stating, "the needs of the patient to have his medical information remain confidential must be balanced against the interest of the public in detecting crimes in order to protect society. Where the evidence is necessary to the proper administration of justice, it is taken out of the physician-patient privilege") (citation and quotation marks omitted).

We find these cases to be persuasive. The victim's personal identifying information contained in the medical records was irrelevant at Appellant's trial. The only purpose served by the medical records was to show that the victim in this case suffered a serious bodily injury. The jury did not need to know the victim's address, birthdate, social security number, or who his insurance company was. Redaction of the victim's personal information here was a proper balance of the patient's privacy and confidentiality needs and the state's interest in prosecuting the crime. The trial court properly considered

the victim's privacy interest in accepting the redacted copy of the medical records.[2]

Finally, we stress that information about the victim's injuries was not limited to the medical records in question. Video evidence of the incident showed Appellant raise his arm while holding a firearm and shoot twice directly at the victim. N.T. Jury Trial at 52-57. The victim was also found lying in a pool of blood, and Detective Corey Adelsberger testified to inspecting the victim and discovering two gunshot wounds. *Id.* at 45-46. Appellant suffered no prejudice here, and is not entitled to relief on his second claim.

Finding both of Appellant's issues to be without merit, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 9/24/2024

---

[2] Moreover, we note that an unredacted, sealed copy of the records was also admitted into evidence.