J-S21035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                          :             PENNSYLVANIA
                          :

            v.                   :

                          :

BROOKS LITTLE              :

                          :

           Appellant         :     No. 2952 EDA 2024

Appeal from the PCRA Order Entered October 21, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004775-2019

BEFORE:    KUNSELMAN, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED DECEMBER 16, 2025**

Appellant, Brooks Little, appeals *pro se* from the order entered by the

Philadelphia County Court of Common Pleas, dismissing his first *pro se*

petition, filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-

9546 ("PCRA"). We affirm.

This Court summarized the underlying facts of Appellant's case on direct

appeal as follows:

> On March 6, 2019, at 10:27 p.m., approximately an hour and
> forty-five minutes before the murder, [Appellant's co-defendant,
> Aaron Durham] called the decedent, Tyrone Armstrong, [via] cell
> phone. At about 10:29 p.m., [Appellant and Durham] entered
> Penn Cafe Pizzeria together at 4909 Catherine Street in
> Philadelphia. As confirmed by video, [Appellant] was wearing a
> blue hoodie with a white Nike emblem, black gloves, tan pants,
> and blue shoes with thick white soles. [Durham] was wearing a

---

[*] Retired Senior Judge assigned to the Superior Court.

black hoodie with a red shirt, black pants, and glasses. After about seven minutes, [Appellant] and [Durham] left together.

They walked past three storefronts and entered the Barn Bar at 4901 Catherine Street. [Appellant] and [Durham] stayed at the bar together for about eleven minutes. They both left the bar after [Durham] received a call from the decedent. At 10:53 p.m., they stopped in the Peeking Inn, at 4905 Catherine Street, for about a minute, before they left the area.

Over a half an hour period, [Armstrong and Appellant] called each other multiple times. They last spoke at 12:02 a.m., about fourteen minutes before the murder. At 12:11 a.m., [Appellant], Durham, and [Armstrong], captured on video, are double parked in front of 4913 Catherine Street in the decedent's 2016 Dodge Ram. [Armstrong] was in the driver's seat with [Durham] in the front passenger seat. [Appellant] was by himself in the backseat.

Five minutes later, video captured the sound of the gunshot as [Appellant] shoots [Armstrong]. [Appellant] then shoots [Armstrong] three more times, as [Durham] opens his door. At 12:18 p.m., video shows [Appellant] putting his gun in his waistband before both men leave the scene together, walking west on Catherine Street.

[Appellant] and [Durham] are captured on video going back and forth to the crime scene multiple times. About thirty seconds after the shooting, [Durham] returns to the vehicle and takes a minute to wipe down the vehicle's surfaces. [Durham] leaves the vehicle and meets up with [Appellant] down the street. At 12:20 a.m., [Appellant] runs back to the vehicle and searches the back and front seat for about thirty seconds and walks [away] again. Approximately four minutes later, he returns to the vehicle and takes off his hoodie. He then turns his inner jacket inside out and wipes down the vehicle's surfaces again. Two minutes later, [Durham], now wearing a puffy jacket, joins [Appellant].

The video [contains audio] snippets of conversation between [Appellant] and [Durham] at the crime scene. One of the men is heard saying: "Where's my phone ... Get it ... Call my phone. Call my phone ... Call it right now." After this conversation, at about 12:28 p.m., [Appellant] puts his hoodie back on and leaves the scene with [Durham].

While this is the last time [Appellant appears] on video, at 2:04 a.m., video captures [Durham] returning to the Barn bar. After

about four minutes, [Durham] left the bar and went into a store down the street for about three minutes, before leaving the scene for the last time at 2:11 a.m.

\* \* \*

[Appellant] was arrested that same day the search warrant was executed and charged with murder and related offenses.

\* \* \*

On November 4, 2021, a jury convicted [Appellant] of first-degree murder, conspiracy to commit murder, possession of an instrument of crime ("PIC"), and violations of the Uniform Firearms Act. The trial court sentenced [Appellant] the same day to a mandatory term of life imprisonment without parole for first-degree murder, along with concurrent sentences for the remaining charges.

**Commonwealth v. Little**, No. 2497 EDA 2021, unpublished memorandum at *1-4 (Pa. Super. filed Feb. 24, 2023).

On February 24, 2023, our Court affirmed Appellant's judgment of sentence, and on June 28, 2023, the Pennsylvania Supreme Court denied his petition for allowance on appeal. **See Commonwealth v. Little**, 293 A.3d 639 (Pa. Super. 2023) (unpublished memorandum), *appeal denied*, 300 A.3d 1009 (Pa. 2023). On August 18, 2023, Appellant filed a *pro se* motion for production of documents, which was denied by the PCRA court. Following the PCRA court's denial of the motion, Appellant filed an untimely notice of appeal to our Court, and we affirmed the PCRA court's decision on June 6, 2024. **See Commonwealth v. Little**, 323 A.3d 187 (Pa. Super. 2024) (unpublished memorandum).

On January 31, 2024, Appellant filed a timely *pro se* PCRA petition, his first. Thereafter, Appellant was appointed three PCRA attorneys to represent

him on appeal, each of whom filed **_Finley_**[1] letters and motions to withdraw. **_See generally Finley_** Letter and Motion to Withdraw as Counsel, 4/17/24; **_Finley_** Letter and Motion to Withdraw as Counsel, 7/14/24; **_Finley_** Letter and Motion to Withdraw as Counsel, 8/15/24. Appellant sent repeated *pro se* requests for new counsel, alleging ineffectiveness of prior PCRA counsel. On September 12, 2024, the PCRA court filed a notice of dismissal pursuant to Pennsylvania Rule of Criminal Procedure 907. Appellant mailed the PCRA court two unfiled *pro se* Rule 907 notice responses. **_See_** PCRA Court Opinion, 10/17/24, at 3 ("On September 30, 2024 and October 4, 2024, this [PCRA] court received unfiled *pro se* responses to this [PCRA court's] 907 notice."). On October 17, 2024, the PCRA court formally dismissed the PCRA petition in an opinion and order. Thereafter, Appellant filed a timely notice of appeal on October 21, 2024. The PCRA court did not order Appellant to file a concise statement of errors complained of on appeal, **_see_** Pa.R.A.P. 1925(b), and relied on its October 17 opinion in support of its rulings.

On appeal, Appellant raises a staggering twenty-four issues for review. **_See_** Appellant's Brief, at 12-16.[2] Appellant's *pro se* status does not relieve him of his duty to follow the Pennsylvania Rules of Appellate Procedure. **_See Commonwealth v. Vurimindi_**, 200 A.3d 1031, 1037 (Pa. Super. 2018)

---

[1] **_See Commonwealth v. Turner_**, 544 A.2d 927 (Pa. 1988) and **_Commonwealth v. Finley_**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[2] Appellant's twenty-four issues are attached in full as Appendix A in this memorandum. **_See_** Appendix A, at 17-20.

("Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant.") (citation omitted).

> Our standard of review is as follows:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion.

*Commonwealth v. Wilson*, 273 A.3d 13, 18 (Pa. Super. 2022) (citation omitted). The PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." *Commonwealth v. Wholaver*, 177 A.3d 136, 144–45 (Pa. 2018) (internal citations omitted). Further, "it is well settled that this Court may affirm a valid judgment or order for any reason appearing as of record." *Id.* at 145 (internal citation omitted).

As an initial matter, our review is limited to claims properly raised in Appellant's *pro se* PCRA petition before the PCRA court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Lewis*, 63 A.3d 1274, 1278 (Pa. Super. 2013) (raising an issue for the first time on appeal instead of before the PCRA court results in waiver). Upon review of the record, it is apparent that Appellant raises numerous claims in his appellate brief that he did not

include in his PCRA Petition. **See** Rule 907 Notice, 9/22/24, at 1-2; PCRA Court Opinion, 10/17/24, at 5-6. Accordingly, Appellant waived twelve out of his twenty-four claims. **See** Appellant's Brief, at 24-32, 47-48, 53-55, 60; Appendix A, at 17-20 (waiving issues 1-4, 10-11, 13-14, and 20-23).[3]

To be eligible for PCRA relief, a petitioner must plead and prove by a preponderance of the evidence that his or her conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S. § 9543(a)(2). These circumstances include a violation of the Pennsylvania or United States Constitution, prosecutorial misconduct, and ineffective assistance of counsel, which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i), (ii).

We note that Appellant, for almost every issue, argues in his statement of the issues that his conviction resulted from several enumerated errors pursuant to the PCRA, such as violations of his constitutional rights, prosecutorial misconduct, and ineffective counsel. **See** Appellant's Brief, at 12-16. However, the PCRA court acknowledges that Appellant only provided

_____

[3] In addition, Appellant's statement of questions involves issues that do not correspond to the arguments developed in his brief. **See** Appellant's Brief, 12-16. Such defects violate Pennsylvania Rule of Appellate Procedure 2116, which requires a concise statement of issues, and Pennsylvania Rule of Appellate Procedure 2119(a), which requires each issue to be supported with developed analysis, citation to authority, and reference to the record. **See** Pa.R.A.P. 2116 and 2119(a). As a result, Appellant also waived five issues on this basis as well. **See** Appendix A, at 17-20 (waiving issues 1-2, 20-23). We proceed to Appellant's claims that are reviewable.

enough information for his claims to be analyzed as challenges sounding in ineffective assistance of counsel. **See** PCRA Court Opinion, 10/17/24, at 7; PCRA Petition, 1/31/24, at 12-17 (unpaginated). Upon review of the record, we agree, and we will only consider Appellant's claims as challenges to the effective assistance of counsel that are discussed by the PCRA court. **See Commonwealth v. Rachak**, 62 A.3d 389, 391 (Pa. Super. 2012) ("Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record.").

In his PCRA petition, Appellant alleged that trial counsel failed to: (1) request a **Kloiber**[4] instruction regarding eyewitness identification; (2) object to the Commonwealth's opening statement; (3) object to the Commonwealth's gunshot residue expert; (4) suppress physical evidence from being seized at Appellant's home; (5) seek suppression of the identification evidence and testimony by Appellant's parole officer; (6) object to the testimony of a medical examiner who did not conduct the decedent's autopsy; (7) call Detective George Fetters as a witness; (8) call defense experts to refute the gunshot residue analysis; (9) call defense experts to refute the video shown by the Commonwealth; (10) seek a competency hearing; and (11) provide proper advice regarding the Commonwealth's plea offer. **See** Appellant's Brief, at 12-16 (paraphrased and re-ordered for clarity); PCRA Petition, 1/31/24, at

---

[4] **Commonwealth v. Kloiber**, 106 A.2d 920 (Pa. 1954).

12-17 (unpaginated). Finally, in issue twelve, Appellant argues that his PCRA counsel failed to identify and raise meritorious claims. ***See id.*** at 16.

The standard test for ineffective assistance of counsel is the same under both the United States and Pennsylvania Constitutions. **See *Strickland v. Washington***, 466 U.S. 668, 687-88 (1984); ***Commonwealth v. Kimball***, 724 A.2d 326, 330-32 (Pa. Super. 1999). The appellant must demonstrate: (1) his underlying claim is of arguable merit; (2) the course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. ***See Commonwealth v. Solano***, 129 A.3d 1156, 1162-63 (2015). A failure to satisfy any prong of the test for ineffectiveness requires rejection of the claim. ***See id.*** at 1163. "[B]oilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." ***Commonwealth v. Sandusky***, 203 A.3d 1033, 1044 (Pa. Super. 2019) (citation omitted).

In issues one and two, Appellant asserts his trial counsel was ineffective for failing to request a ***Kloiber*** instruction and for failing to object to the Commonwealth's opening statement. ***See*** Appellant's Brief, at 55-57; PCRA Petition, 1/31/24, at 4. As the PCRA court observed, these allegations consisted of boilerplate bald assertions unsupported by factual specificity or legal development. ***See*** PCRA Court Opinion, 10/17/24, at 7. Upon review, we agree that Appellant's boilerplate allegations were insufficient to establish any

prong of ineffective assistance of counsel. ***Sandusky***, 203 A.3d at 1044. Accordingly, Appellant is entitled to no relief on either claim.

In issue three, Appellant alleged that trial counsel was ineffective for failing to object to the Commonwealth's gunshot residue expert during trial. ***See*** Appellant's Brief, at 44-45; PCRA Petition, 1/31/24, at 12 (unpaginated). Appellant states his argument but offers no analysis as to how trial counsel was ineffective. ***See id.*** Although our Court "[m]ay overlook minor defects or omissions in an appellant's brief, we will not act as his or her appellate counsel". ***Commonwealth v. Freeman***, 128 A.3d 1231, 1249 (Pa. Super. 2015) (citation omitted). Accordingly, Appellant's third claim is waived.

Appellant alleged that trial counsel was ineffective for failing to file a motion to suppress his shoes seized from his bedroom. ***See*** PCRA Petition, 1/31/24, at 13 (unpaginated). On appeal, he argues only that the PCRA court erroneously dismissed the claim because the sneakers in the video allegedly differ from those introduced at trial. ***See*** Appellant's Brief, at 42-44. The PCRA court correctly rejected Appellant's underlying suppression claim. ***See*** PCRA Court Opinion, 10/17/24, at 9. The record established that Appellant was arrested at his home pursuant to a search incident to lawful arrest, and his shoes at issue were in plain view during the lawful search. ***See*** N.T. Trial, 11/3/21, at 113-15. The plain view doctrine allows the admission of evidence seized without a warrant when "(1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object."

*Commonwealth v. Smith*, 285 A.3d 285, 332 (Pa. Super. 2022) (citation omitted). Here, Appellant's shoes were lawfully seized because they were in plain view in Appellant's bedroom. Therefore, the plain view doctrine applies, and the PCRA court correctly found Appellant's fourth claim is meritless.

In issue five, Appellant argues that trial counsel was ineffective for failure to suppress identification evidence and testimony by Appellant's parole officer, Jon Luckens. *See* Appellant's Brief, at 58-59. Appellant litigated this issue on direct appeal. *See Commonwealth v. Little*, No. 2497 EDA 2021, unpublished memorandum at *6 (Pa. Super. filed Feb. 24, 2023); *see also* PCRA Court Opinion, 10/17/24, at 9. Under the PCRA, a petitioner must establish that the claims of error raised in the PCRA petition have not been previously litigated or waived, and that "the failure to litigate the issue prior to or during trial, . . . or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." 42 Pa.C.S. § 9543(a)(3), (4). Accordingly, Appellant's fifth claim is previously litigated and not cognizable under the PCRA.

Next, Appellant, in his sixth issue, argues that trial counsel was ineffective for failing to object to the testimony of Dr. Lindsay Simon, a medical examiner with the Philadelphia Medical Examiner's Office, who testified in place of Dr. Lyndsey Emery, the examiner who performed the autopsy of the decedent. *See* Appellant's Brief, at 33; PCRA Petition, 1/31/24, at 14-15 (unpaginated). Appellant contends that Dr. Simon's testimony

- 10 -

violated his rights under the Confrontation Clause[5] because Dr. Simon did not conduct the autopsy and instead relied on Dr. Emery's autopsy report. *See id.* According to Appellant, this constituted inadmissible "surrogate" medical examiner testimony that deprived him of his right to cross-examine Dr. Emery, whose findings were introduced through Dr. Simon. *See id.* at 34. Appellant alleges that Dr. Simon's inability to answer questions, such as what gunshot wounds were fatal, the order of the gunshot wounds, and the time of death, demonstrated that Dr. Simon's testimony lacked personal knowledge necessary to satisfy constitutional standards. *See id.* at 36. Appellant relies on *Melandez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), which prohibit the admission of forensic evidence through a substitute analyst who did not perform or observe the original testing. *See id.* at 34.

The PCRA court rejected this claim, concluding that Dr. Simon's testimony did not violate the Confrontation Clause because she formed an independent expert opinion based on her review of Dr. Emery's autopsy report and relevant photographs, she prepared her own diagram, and she testified, expressing her expert opinion to a reasonable degree of scientific certainty. *See* PCRA Court Opinion, 10/17/24, at 12 (citing N.T. Trial, 11/3/21, at 95-

---

[5] "The Sixth Amendment's Confrontation Clause generally prohibits the admission of hearsay statements that are 'testimonial' in nature." *Commonwealth v. McCullough*, 324 A.3d 582, 585 (Pa. Super. 2024) (citing *Crawford v. Washington*, 541 U.S. 36, 50-60 (2004)).

104). Upon review, we find the PCRA court's dismissal of Appellant's claim was proper under **Commonwealth v. Brown**, 185 A.3d 316, 332 (Pa. 2018) (where substitute medical examiner "properly formed an independent opinion, and was available to be cross-examined regarding the basis of that opinion, … there was no Confrontation Clause violation with respect to [the] opinion regarding the cause of death"). Moreover, to the extent that Dr. Emery's opinion in the report was made known to the jury through Dr. Simon's testimony, such admission of evidence was rendered harmless beyond a reasonable doubt because Dr. Simon testified to her own independent opinion with the same conclusion as Dr. Emery. **See id.** at 332-33.

In issues seven through nine, Appellant asserts that trial counsel was ineffective for failing to call Detective George Fetters as a witness and for failing to hire defense experts to refute the Commonwealth's gunshot residue analysis and video compilation. **See** Appellant's Brief, at 39-42, 48-53, 57-58.

When raising a claim of ineffective assistance for failing to call a potential witness, a PCRA petitioner must satisfy the performance and prejudice requirements by demonstrating that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

**Commonwealth v. Sneed**, 45 A.3d 1096, 1108-09 (Pa. 2012) (internal citations omitted). Additionally, "[t]rial counsel will not be deemed ineffective

- 12 -

for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony [that] was presented by the prosecution." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1143 (Pa. 2011) (citation omitted).

Here, Appellant's claim that trial counsel was ineffective for failing to call Detective Fetters or any expert witnesses is belied by the record. ***See*** PCRA Court Opinion, 10/17/24, at 10-12. At trial, Appellant expressly stated under oath that he did not wish to call Detective Fetters or any other witnesses in his defense. ***See*** N.T. Trial, 11/3/21, at 156-179; N.T. Trial, 11/4/21, at 48-49. However, "a defendant who makes a knowing, voluntary, and intelligent decision concerning trial strategy will not later be heard to complain that trial counsel was ineffective on the basis of that decision. ... To do otherwise ... would allow a defendant to build into his case a ready-made ineffectiveness claim to be raised in the event of an adverse verdict." ***Commonwealth v. Thomas***, 323 A.3d 611, 626 (Pa. 2024) (citation omitted). Appellant stated at trial that he did not wish to call witnesses; therefore, his claims are waived. Moreover, Appellant did not identify any witness by name, provided no affidavit establishing availability or willingness to testify, and did not show how the supposed testimony would change the outcome of the trial. ***See Sneed***, ***supra***. Therefore, Appellant's seventh, eighth, and ninth claims fail.

In issue ten, Appellant avers that his trial counsel failed to request a "fitness hearing" because Appellant was unfit for trial due to COVID-19 restrictions. ***See*** Appellant's Brief, at 59-60. A defendant is presumed to be

competent to stand trial, and the burden is on the defendant to prove by the preponderance of the evidence that he is incompetent. ***See Commonwealth v. Blakeney***, 108 A.3d 739, 752 (Pa. Super. 2014). The PCRA court concluded that Appellant's claimed lack of competency was meritless as he was found competent to stand trial and provided no evidence to the contrary in his petition. ***See*** PCRA Court Opinion, 10/14/17, at 13 (citing N.T. Motion Hearing, 10/7/21, at 19-21). We agree that Appellant has failed to establish prejudice. ***See Sandusky***, 203 A.3d at 1044. Therefore, Appellant's tenth claim is meritless.

In issue eleven, Appellant argues that his trial counsel was ineffective for allegedly failing to competently advise him to take the Commonwealth's plea deal. ***See*** Appellant's Brief, at 37-39. Appellant only raised this claim in his October 4, 2024 response to the Rule 907 notice of intent to dismiss. ***See*** PCRA Court Opinion, 10/14/24, at 3; Rule 907 Notice, 9/12/24, at 1-2. Appellant never requested leave to amend his PCRA petition. He simply mailed *pro se* documents purporting to supplement the original petition. A defendant may not raise entirely new claims in his response to the Rule 907 notice. ***See*** Pa.R.Crim.P. 905(A); ***Commonwealth v. Miranda***, 317 A.3d 1070, 1076 (Pa. Super. 2014) (stating Rule 905 amendments are not "self-authorizing such that a petitioner may simply amend a pending petition with a supplemental pleading.") (quotation marks and citation omitted). Therefore, Appellant waives this claim.

Even if Appellant did not waive this claim, the record supports the PCRA court's findings that Appellant's claim has no merit. ***See Commonwealth v. Pier***, 182 A.3d 476, 480 (Pa. Super. 2018) ("A person who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy.") (citation omitted). The trial court ensured that Appellant understood the Commonwealth's plea offer. ***See*** N.T. Motion Hearing, 10/7/21, 16-30; N.T. Trial, 11/1/21, at 68. Additionally, the trial court confirmed that Appellant had the opportunity to discuss the offer with counsel. ***See*** N.T. Motion Hearing, 10/7/2021, at 26. Appellant then rejected on the record the Commonwealth's offer to plead guilty to murder in the third degree. ***See id.*** at 32. Since Appellant proffered nothing to demonstrate that counsel's advice was inadequate, we conclude that the PCRA court properly dismissed the claim as meritless.

Finally, in issue twelve, Appellant baldly states that his PCRA counsel was ineffective for "failing to identify and waive meritorious claims". Appellant's Brief, at 61. Appellant must identify which of his three appointed PCRA counsel were allegedly ineffective and specify what "meritorious" claim counsel overlooked. ***See id.*** Such undeveloped allegations fail to satisfy his burden under the PCRA. ***See Commonwealth v. Bradley***, 261 A.3d 381, 402 (Pa. 2021) (noting that boilerplate allegations of PCRA counsel's ineffectiveness are meritless). Moreover, Appellant's attempt to develop this issue in his reply brief is inadequate. ***See*** Appellant's Reply Brief at 4-13.

Indeed, a "claim is waived if it is raised for the first time in a reply brief." ***Commonwealth v. Collins***, 957 A.2d 237, 259 (Pa. 2008). Accordingly, Appellant's twelfth claim is meritless, and any new claims raised in his reply brief are waived. Accordingly, we conclude that the PCRA court's findings are supported by the record, and we discern no abuse of discretion or error of law in the dismissal of Appellant's petition. ***See Wilson***, 273 A.3d at 18.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/16/2025

**APPENDIX A**

1. Was due process of law violated, 14th Amendment Rights were violated, ineffective assistance of counsel, prosecutorial misconduct, reversible trial court error, when the Commonwealth withheld in court identification and testimony of allege[d] co-defendant, and trial counsel failing to call alleged co-defendant as witness [sic]?

2. Was due process of law violated, 14th Amendment Rights were violated, ineffective assistance of counsel, prosecutorial misconduct, [r]eversible trial court error, when trial counsel failed to object to identification of missing allege[d] co-defendant and identification for target number of allege[d] co-defendant [sic]?

3. Did the trial court abuse its discretion when it said no arrest photo, and allowed the Commonwealth to introduce the arrest photo as the title page of the video compilation with the homicide case number underneath of the arrest photo and a Philadelphia police badge next to the arrest photo which would have been taken as a [p]olice [p]hoto [n]umber and after the outcome, was there reversible error, prosecutorial misconduct, due process of law violation, 14th Amendment Rights were violated, and ineffective assistance of counsel [sic]?

4. Was there reversible trial court error, due process of law rights violation, prosecutorial conduct, 14th Amendment violation, ineffective assistance of counsel, when trial counsel failed to object to homicide interview [sic]?

5. Did the trial court abuse its discretion, was there reversible error, due process of law rights violated, prosecutorial misconduct, 14th Amendment rights violation, ineffective assistance of counsel failing to object to confrontation clause violation of surrogate medical examiner in place of medical examiner that performed the autopsy [sic]?

6. Was due process of law violated, 14th Amendment rights violated, ineffective assistance of counsel [sic], when the advi[c]e this petition[er] received f[ro]m trial counsel was so incorrect and so insufficient that it undermined this [petitioner's] ability to make an intelligent decision about whether to accept the plea offer?

7. Was due process of law rights violated, 14th Amendment rights violated, [i]neffective assistance of counsel, and [petitioner]

- 17 -

deprived of his rights to a fair trial when trial counsel failed to hire a defense expert in video analysis and recovery?

8. W[ere] due process rights violated, 14th Amendment rights were violated, prosecutorial misconduct, [] ineffective assistance of counsel [sic], when the evidence shoes the Commonwealth introduced at trial were not the shoes this petitioner wore on his feet on the night in question?

9. W[ere] due process rights violated, 14th Amendment rights violated, [p]rosecutorial misconduct[], ineffective assistance of counsel [sic], when trial counsel failed to object to the Commonwealth forensic scientist testifying [to] two-component particles consistent with gunshot residue [were] present on both shoes and did not offer testimony in regard to which two-component particles were present?

10. Did the trial court abuse its discretion, were [d]ue process [] rights violated, prosecutorial misconduct, 14th Amendment rights violated, [i]neffective assistance of trial counsel [sic], when the Commonwealth and the [PCRA] court made sure the Commonwealth forensic scientist was present at trial, and did not make sure the affiant and assigned lead investigator was present the detective [sic] that recovered the evidence the commonwealth forensic scientist testified about?

11. W[ere] due process of law rights violated, 14th Amendment rights violated, [i]neffective assistance of counsel, when trial counsel['s] defense was this petitioner suffered from his 2004 injury, and the Commonwealth video compilation showed no hindrance in ability, and trial counsel introduced none of [Appellant's] medical records to support his defense and did not hire a medical expert?

12. Did the [PCRA] court abuse its discretion and commit reversible error by not hearing any testimony from the affiant, and assigned lead investigator, allege[d] co-defendant, the informant that informed the affiant and lead investigator that this petitioner was involved in this homicide, and detective Frank Mullen, were this petitioners' rights to due process of law and a fair trial violated by the misconduct of this Commonwealth and the [PCRA] court, also was [PCRA counsel] ineffective assistance for not calling these witnesses?

13. W[ere] due process rights violated, 14th Amendment rights violated, prosecutorial misconduct , [] ineffective assistance of

counsel [sic], when the fact finder was kept completely in the dark about the affiant and assigned lead investigator being on the Philadelphia District Attorney's "DO NOT CALL LIST[,]" [where] the fact finder was barred from considering this evidence and prohibited from balancing this evidence when placed along[]side other evidence in this case, and was this a *Brady* violation and/or ineffective assistance of counsel?

14. W[ere] [d]ue process of law rights violated, 14th Amendment rights violated, ineffective assistance of counsel [sic], when trial counsel failed to hire a defense expert in historical [c]ell-[s]ite [l]ocation [i]nformation [] ?

15. Was there ineffective assistance of counsel, and [were] rights to a fair trial [ and] 14th Amendment rights violated, when trial counsel failed to request a *Kloiber* instruction, with no eyewitness and the footage of the incident being [too] blurry for somebody to make [an] identification?

16. W[ere] due process of law rights violated, prosecutorial misconduct, [] 14th Amendment rights violated, ineffective assistance of counsel [sic], when trial counsel failed to object to the [Commonwealth's] opening statements that [Appellant] entered into the decedent[']s truck at 49th and Catharine street[s], the video compilation did not show this, [or the] three occupants inside the truck when it arrives at 49th and Catharine street[s]?

17. Was there ineffective assistance of counsel, and rights to a fair trial violated, 14th Amendment rights violated [sic], when trial counsel failed to hire a defense expert in gunshot residue analysis and recovery, and trial counsel failed to investigate the gunshot residue analysis?

18. W[ere] due process of law rights violated, prosecutorial misconduct, 14th Amendment rights violated, ineffective assistance of counsel [sic], when the Commonwealth withheld from the fact finder parole officer Jon Lukens statement to investigators that this petitioner ha[s] a motorcycle parked in front of his house, [as set forth in] Jon Lukens [h]omicide interview?

19. W[ere] due process of law rights violated, prosecutorial misconduct, 14th Amendment rights violated, ineffective assistance of counsel [sic], when the trial court failed to give this

petitioner a fitness hearing, and trial counsel failed to request a fitness hearing?

20. W[ere] due process of law rights violated, prosecutorial misconduct, reversible error, 14th Amendment rights violated, ineffective assistance of counsel [sic], when the Commonwealth withheld from the fact finder the ORIGIN/beginning of the case, [where] a person at 4913 Catharine Street with a gun at 3:06 am, 2019, [without] objection [sic]?

21. Was there ineffective assistance of counsel, due process of law rights violated, 14th Amendment rights violated [sic], when trial counsel failed to hire a defense expert in video analysis and recovery, with the Commonwealth video compilation being created by Detective Lucke from hundreds of sections of diff[e]rent videos from diff[e]rent businesses and residences and hundreds of hours of other footage?

22. Was due process of law violated, 14th Amendment rights violated, prosecutorial misconduct, reversible error, ineffective assistance of counsel [sic], when trial counsel failed to object to identification testimony of the Commonwealth identification witness, Jamie Linke?

23. Was due process of law violated, prosecutorial misconduct, reversible error, 14th Amendment rights violated [sic], when trial counsel failed to object to [C]ommonwealth identification witness Jon Lukens when he is not a[n] eye witness, was not shown the video of the shooting itself, was made aware of who he was going to identify before he viewed the businesses['] surveillance video, and trial counsel withdrew his motion to suppress identification?

24. Was PCRA counsel ineffective assistance of counsel, when he failed to identify and raise meritorious claims?